1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
Jessica S. Pliner, SB# 261976

2      Email: Jessica.Pliner@lewisbrisbois.com
Brad M. Weintraub, SB# 299298

3      Email: Brad.Weintraub@lewisbrisbois.com
2185 N. California Blvd., Suite 300

4  Walnut Creek, California 94596
Telephone: 925.357.3456

5  Facsimile: 925.478.3260

6  Attorneys for Defendant HULA NETWORKS, INC.

7

8                   UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11  MARTHA SILVA, an Individual,              CASE NO.

12             Plaintiff,                     **DEFENDANT HULA NETWORKS, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1441 (a) AND 1331**

13        vs.

14  HULA NETWORKS, INC., a California         **[FEDERAL QUESTION JURISDICTION]**
corporation,

15             Defendants.

16

17      TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

18  NORTHERN DISTRICT OF CALIFORNIA:

19      **PLEASE TAKE NOTICE** that on January 27, 2020, Defendant HULA NETWORKS, INC.,

20  a California corporation ("Defendant"), filed this Notice of removal on the basis of federal question

21  jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1441(a), 28 U.S.C. § 1446, and 28 U.S.C. §

22  1367(a) as follows:

23      1.      On November 4, 2019, Plaintiff MARTHA SILVA ("Plaintiff"), by and through her

24  attorneys of record, filed a civil action in the Superior Court of the State of California in and for the

25  County of Santa Clara, entitled *Martha Silva v. Hula Networks, Inc.*, Case No. 19CV357985,

26  commenced on November 4, 2019. A true and correct copy of the Summons and Complaint are

27  attached as **Exhibit A.**

28

4838-2312-1586.1

1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

2.      On December 29, 2019, Plaintiff served the Summons and Complaint on Defendant. A true and correct copy of the **Proof of Service of Summons** is attached as **Exhibit B.**

3.      On January 17, 2019, Plaintiff filed a First Amended Complaint and Defendant accepted service via email on January 24, 2019. A true and correct copy of the First Amended Complaint and the email correspondence is attached as **Exhibit C.**

4.      This Notice of Removal is filed within the thirty (30) day time limit for removal set forth in 28 U.S.C. § 1446(b)(3).

## FEDERAL QUESTION JURISDICTION

3.      The basis for removal is that this Court has original jurisdiction of this action under 28 U.S.C. § 1331 and is one which may be removed to this Court by Defendant pursuant to 28 U.S.C. § 1441(b)(3), in that Plaintiff's Complaint contains a cause of action "arising under the Constitution, laws, or treaties of the United States."

4.      Plaintiff's Complaint alleges, among other things, that Defendant engaged in discrimination based on race or national origin, thereby violating Title VII of the Civil Rights Act of 1964 ("Title VII).

## JURISDICTION OVER STATE LAW CLAIMS

5.      The other causes of action and bases for relief asserted by Plaintiff in this action arise out of the same set of facts and are part of the same case and controversy involving the alleged violations of Title VII, so that this Court has supplemental jurisdiction over those other causes of action and bases for relief within the meaning of 28 U.S.C. § 1367(a).

**WHEREFORE**, Defendant respectfully prays that this Notice of Removal be deemed good and sufficient, and that Case No. 19CV357985 be removed from the Superior Court of California, County of Santa Clara, to the docket of this Honorable Court.

Dated: January 27, 2020                    LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/ Brad M. Weintraub*
_____
Jessica S. Pliner
Brad M. Weintraub
Attorneys for Defendant HULA NETWORKS, INC.



# EXHIBIT A

# CIVIL LAWSUIT NOTICE

**ATTACHMENT CV-5012**

*Superior Court of California, County of Santa Clara*
*191 North First St., San José, CA  95113*

CASE NUMBER: 19CV357985

## PLEASE READ THIS ENTIRE FORM

***PLAINTIFF*** (the person suing):  Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

**DEFENDANT** (The person sued):  **You must do each of the following to protect your rights:**

1. You must file a **written response** to the *Complaint, using the proper legal form or format*, in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint;*
2. You must serve by mail  a copy of your written response on the  Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

**Warning: If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**

***RULES AND FORMS:***   You must follow the California Rules of Court and the Superior Court of California, County of <_CountyName_> Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms:  www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms:  http://www.sccsuperiorcourt.org/civil/rule1toc.htm

***CASE MANAGEMENT CONFERENCE (CMC):***   You must meet with the other parties and discuss the case, in person or by telephone at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC.*  You may ask to appear by telephone – see *Local Civil Rule 8.*

Your Case Management Judge is: _____ Kirwan, Peter _____ Department: 19

The 1st CMC is scheduled for: (Completed by Clerk of Court)

Date: 3/3/20 _____ Time: 3:00 p.m. _____ in Department: 19

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)

Date: _____ Time: _____ in Department: _____

***ALTERNATIVE DISPUTE RESOLUTION (ADR):***   If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

***WARNING:*** Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

CV-5012 REV 08/01/16

**CIVIL LAWSUIT NOTICE**

Page 1 of 1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Yosef Peretz    (Bar # 209288)<br>PERETZ & ASSOCIATES<br>22 Battery Street, Suite 200<br>San Francisco , CA 94111<br>TELEPHONE NO.: (415) 732-3777    FAX NO.: (415) 732-3791<br>ATTORNEY FOR *(Name)*: Martha Silva , Plaintiff | **Electronically Filed<br>by Superior Court of CA,<br>County of Santa Clara,<br>on 11/4/2019 3:23 PM<br>Reviewed By: Patricia Hernandez<br>Case #19CV357985<br>Envelope: 3606222** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 N First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose  95113
BRANCH NAME:

CASE NAME:
Martha Silva, an individual v. HULA NETWORKS, INC., a California corporation

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>19CV357985 |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[X] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify)*: TWENTY-FOUR (24)
5. This case [ ] is  [X] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*
Date:

Yosef Peretz
(TYPE OR PRINT NAME)                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

*LexisNexis® Automated California Judicial Council Forms*

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

*LexisNexis® Automated California Judicial Council Forms*

E-FILED
11/4/2019 3:23 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
19CV357985
Reviewed By: Patricia Hernandez

1  Yosef Peretz (SBN 209288)
   yperetz@peretzlaw.com
2  David Garibaldi (SBN 313641)
   dgaribaldi@peretzlaw.com
3  PERETZ & ASSOCIATES
   22 Battery Street, Suite 202
4  San Francisco, CA 94111
   Telephone: 415.732.3777
5  Facsimile: 415.732.3791

6

7  Attorneys for Plaintiff MARTHA SILVA

8       **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
        **IN AND FOR THE COUNTY OF SANTA CLARA**
9

10  MARTHA SILVA, an individual            Case No. 19CV357985

11                                          **COMPLAINT AND DEMAND FOR JURY**
                                            **TRIAL**
12          Plaintiff,

13  v.                                      1.  Discrimination Based on Race or National
                                                Origin in Violation of the California FEHA;
14  HULA NETWORKS, INC., a California       2.  Harassment and Hostile Work Environment
                                                Based on Race or National Origin in
15  corporation                                 Violation of the California FEHA;
                                            3.  Failure to Pay the Minimum Wage in
16          Defendants.                         Violation of California Labor Code §
                                                1182.12;
17                                          4.  Failure to Pay Overtime Wages in Violation
                                                of California Labor Code §§ 510, 1194, and
18                                              1198, and California IWC Wage Orders;
                                            5.  Failure to Provide Meal and Rest Periods in
19                                              Violation of California Labor Code §§
                                                226.7, 512, 1198, and California IWC Wage
20                                              Orders;
                                            6.  Failure to Pay Timely Wages in Violation
21                                              of California Labor Code § 226;
                                            7.  Failure to Reimburse Employee Expenses in
22                                              Violation of California Labor Code § 2082;
                                            8.  Unlawful, Unfair, and Fraudulent Business
23                                              Practices in Violation of Bus. & Prof. Code
                                                §§ 17200 and 17203, *et seq.*;
24                                          9.  Discrimination Based on Race or National
                                                Origin in Violation of Title VII of the Civil
25                                              Rights Act of 1964;

26

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL
- 1 -

10. Harassment Based on Race or National Origin in Violation of Title VII of the Civil Rights Act of 1964;
11. Failure to Pay Minimum Wage in Violation of the Fair Labor Standards Act;
12. Failure to Pay Overtime Wages in Violation of the Fair Labor Standards Act;
13. Failure to Pay Timely Wages in Violation of the Fair Labor Standards Act;
14. Discrimination Based on Race or National Origin in Violation of the New Jersey Law Against Discrimination;
15. Harassment Based on Race or National Origin in Violation of the New Jersey Law Against Discrimination;
16. Failure to Pay Minimum Wage in Violation of the New Jersey Wage and Hour Law;
17. Failure to Pay Overtime Wages in Violation of the New Jersey Wage and Hour Law;
18. Failure to Pay Timely Wages in Violation of the New Jersey Wage and Hour Law;
19. Discrimination Based on Race or National Origin in Violation of Puerto Rico Act 100;
20. Harassment Based on Race or National Origin in Violation of Puerto Rico Act 100;
21. Failure to Pay Minimum Wage in Violation of Puerto Rico Minimum Wage, Vacation and Sick Leave Law;
22. Failure to Pay Overtime Wages in Violation of Puerto Rico Minimum Wage, Vacation and Sick Leave Law;
23. Failure to Pay Timely Wages in Violation of Puerto Rico Minimum Wage, Vacation and Sick Leave Law; and
24. Breach of Contract under California, New Jersey and/or Puerto Rico Laws.

Plaintiff MARTHA SILVA ("Silva") complains and alleges as follows:

I.      INTRODUCTION

1.      This is an action brought by Silva against Defendant HULA NETWORKS, INC. ("Hula") for various employment law violations pertaining to Silva's employment at Hula.

2.      Silva is an Account Representative who presently works for Hula, a company located and headquartered in Santa Clara County, California.  Silva has worked at Hula since

December 1, 2013 until the present. Initially, she worked for Hula remotely from her home in Puerto Rico. In approximately October 2017, Silva moved to New Jersey and continued to work remotely for Hula from New Jersey, and does so to date.

3.      In April 2014, Silva suffered a debilitating accident, causing her to seriously fracture her left ankle, and she became bedridden for approximately 7 months. Rather than accommodate her disability in any way, Hula forced Silva to continue working as though she had not suffered any injury at all, even forcing her to work from the hospital and her bed at home, against the orders of her medical providers.

4.      Despite her devotion to Hula, Silva was repeatedly subjected to mockery and harassing conduct on account of her race and national origin by numerous members of Hula's officers, including but not limited to Scott Hobin, its Chief Executive Officer ("Hobin") and Steve Robinson ("Robinson"), its Chief Operating Officer. This abuse has created a sever and/or pervasive and hostile work environment for Silva.

5.      Silva was also misclassified as a "1099 contractor", *i.e.* an independent contractor, throughout her time at Hula and thereby denied minimum pay, straight time wages, overtime wages and meal and rest break premiums. Hula classified her as such for the express purpose of paying her lower compensation, as it nevertheless directed all of her work and required her to work upwards of 12 hours per day for nearly every day of her employment so long as she was physically capable of doing so.

6.      Silva, therefore, seeks to recover actual damages, restitution, general damages, civil penalties, statutory damages, and punitive damages he suffered as a result of the wrongful conduct she was subjected to, as well as the costs of this lawsuit, including reasonable attorneys' fees.

## II.     PARTIES

7.      Silva is a resident of the State of New Jersey since approximately October 2018. Prior to that, she was a resident of Puerto Rico at all relevant times.

8.      Hula is a California corporation that operates a computer networking business, headquartered in Sunnyvale, California. For all relevant times, Hula was and is still an employer within the meaning of the California Fair Employment and Housing Act, California Government Code ("Gov't Code") § 12926, *et seq.* ("FEHA").

9.     Hobin is an individual residing in Santa Clara County, California.  He is the Chief Financial Officer ("CFO") of Hula since its inception, and upon information and belief he has recently been appointed to be Hula's Chief Executive Officer ("CEO").  Hobin has been with Hula since its incorporation in 2002.

10.    Robinson is an individual residing in Santa Clara County, California.  He is the Chief Operating Officer ("COO") of Hula since its inception, and he has been with Hula since its incorporation in 2002.

11.    Defendants Does 1 through 20 are sued herein under fictitious names pursuant to California Code of Civil Procedure ("CCP") § 474.  These defendants are in some way liable for the damages sustained by Silva.  Upon information and belief, Does 1 through 20 acted with and on behalf of Hula in the alleged violations.  Silva does not, at this time, know the true names or capacities of said unnamed defendants, but prays that the same may be inserted herein when ascertained.

12.    Silva is informed and believes and thereon alleges that each of the Defendants designated as a doe is responsible in some manner for the events and happenings herein, and that Silva's injuries and damages as hereinafter set forth were proximately caused by Defendants.  Silva is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants sued herein was the agent and/or employee of each of the remaining Defendants, and each of them, was at all times acting within the purpose and scope of such agency and employment.

III.    JURISDICTION AND VENUE

13.    Jurisdiction and venue are proper because Silva's claims and causes of action arose in the County of Santa Clara, because records relating to the claims made in this action are located in Santa Clara County, because numerous percipient witnesses and employees of Hula live in Santa Clara County, and because Hula is headquartered in and regularly does business in Santa Clara County.

14.    In response to Defendants' unlawful conduct, Silva filed a Complaint of Discrimination against Defendant with the California Department of Fair Employment and Housing ("DFEH") on November 4, 2019.  The DFEH issued a Right-To-Sue Notice under Gov't Code § 12965(b), permitting Silva to file a civil action under FEHA and any federal

discrimination statute that same day.  A copy of said Complaint of Discrimination and Right-to-Sue Notice are attached herein as Exhibits A and B, respectively.

15.     Pursuant to a Work-Sharing Agreement between the EEOC and DFEH, a charge filed with one agency is deemed filed with the other, and the same applies to a right-to-sue notice provided by either agency.

## IV.     FACTUAL ALLEGATIONS

16.     Silva is a 54 year-old woman of Puerto Rican origin.  While she is fluent in English, she speaks the language with a heavy accent.

17.     On or about December 1, 2013, Silva was hired by Hula as an Account Representative reporting directly to Hobin, tasked with obtaining clients and making sales on Hula's behalf.  Silva's employment was based upon a written agreement that was signed between the parties (the "employment agreement") and it asserted that she was presumably a "1099 contractor at will," and that she would receive a flat salary plus commissions based on her sales, a company cell phone issued at a maximum of $100 per month, $400 towards full medical and dental benefits 90 days after starting, and would be given 5 paid vacation days per year and 5 personal sick days per year commencing after the first 6 months of her work.  A true and correct copy of Silva's employment agreement is attached hereto as Exhibit C.

18.     Although the employment agreement referred to Silva as a "1099 contractor," Silva performed as a *de facto* employee of Hula throughout her time there, to the present.  At all relevant times, Hula controlled, and still controls, the tasks that Silva performs for Hula and all business aspects of her job at Hula.

19.     At the time of her hiring, Silva was living in Puerto Rico and was hired by Hula to work remotely in Puerto Rico in order to give Hula a presence there.

20.     Between December 1, 2013 and April 2014, Silva worked approximately 12 hours per day at Hula's direction.  Hula required her to work these hours as it required her to attend meetings by phone or communicate with her supervisors at odd times caused due to the time difference between Puerto Rico and California.  This required Silva to sometimes wake up as early as 4:00 a.m. or to work as late as 10:00 p.m. most days.  During this time, Silva was also not afforded any ten-minute rest breaks by Hula and worked through them almost every single day of her employment.

21.     In or around April 2014, Silva suffered a debilitating accident where she fell down a set of stairs and suffered a serious fracture to her left ankle. Silva had to undergo surgery to repair the fracture.

22.     As part of her recovery plan, she was prescribed 7 straight months of bed rest in order for her ankle to properly heal and had to stay at the hospital for 9 days before she could be discharged. Silva's medical provider specifically ordered that Silva was not allowed to walk or leave her bed for any reason except to take a shower or attend a doctor's appointment.

23.     As a result of this debilitating injury, Silva was physically incapable of doing many of her employment tasks, such as attend meetings or personally interact with local clients.

24.     Nevertheless, rather than afford her any time off or any accommodations for this injury, Hula still required Silva to work from her bed by taking phone calls and working on her computer. Hula required Silva to attend to a client's emergency just one day after she underwent surgery and was still in the hospital. Silva worked approximately 6 to 8 hours per day during this time frame, but the only reason she did not work longer was because she was not physically capable of doing so.

25.     Despite her dedication, Hula, particularly through Hobin and Robinson, did not take news of Silva's injury well and effectively deemed her a burden instead of an asset. As such, Hula began to withdraw any support towards Silva and actively started to undermine her efforts to do her job in an attempt to coerce her to resign from her employment.

26.     Once, while still injured, Silva had no choice but to leave her bed and visit her best client, Evertech, in person in a wheelchair in order to maintain Hula's client-service relationship with that customer. Despite this, Hula continued to provide Silva with no support on this account and she temporarily lost Evertech as a client, which further damaged her income as she had been switched to a commission-only compensation scheme.

27.     After the 7 months of bed rest, Silva had to undergo physical therapy for approximately 5 additional months before she could get around fully under her own power. After she fully recovered from her injuries, in or around April 2017, Silva again began to work nearly 12-hour days for Hula on almost every day that she worked.

28.     Once Silva was able to attend weekly telephone meetings with the entire Hula team, Hobin, Robinson, and other members of Hula would mock Silva during the meetings. Hobin and Robinson would routinely put the call on "mute" while Silva was speaking and then

proceed to crack jokes at her expense, making fun of Silva's accent and manner of speaking. Hobin, Robinson, and others would make statements such as saying that Silva had "marbles in her mouth," or would laugh and snicker whenever Silva was speaking. Silva could tell she was being put on "mute" due to the difference in sound coming from the line. This has occurred almost every Monday since she was able to once again attend the weekly telephone meetings.

29. In addition to making fun of her voice, Hobin and Robinson began to ostracize Silva from Hula in other ways. For instance, during these weekly Monday phone meetings, Hobin and Robinson would do things such as ask each and every member of the team to briefly state how their weekend went, *except* Silva. Hobin and Robinson purposefully ignored Silva on these calls in this manner in an attempt to make her feel alone and isolated.

30. Then, on or about September 2017, Silva received a phone call from Hobin and Robinson, informing her that they were very unhappy with her performance to date and that she needed to earn $10,000 in commissions by the next month or face severe consequences. Silva responded that it would be impossible for her to achieve such high sales commissions due to the limited contributions she could make as a result of her ongoing health issues at that time. Hobin and Robinson were not sympathetic and imposed this unreasonable goal on Silva.

31. In September 2017, Hurricane Maria devastated the island of Puerto Rico, leaving millions without electricity or running water. In October 2017, the damage by Hurricane Maria caused Silva to move to the State of New Jersey.

32. Once Silva was settled in New Jersey, and until the present, Silva has again worked approximately 12 hours per day at Hula's direction. Hula required her to work these hours as it required her to attend meetings by phone or communicate with her supervisors at odd times caused due to the time difference between New Jersey and California. This required Silva to sometimes wake up as early as 4:00 a.m. or to work as late as 10:00 p.m. most days. Silva also still did not take any ten-minute rest breaks but simply worked through them.

33. By November 2017, Silva had been unable to meet the commission goal imposed on her by Hobin and Robinson. As a result, Robinson informed Silva that Hula would be switching her compensation structure from a guaranteed base salary plus commissions to commissions only. During this call, Robinson told Silva that she was now "on your own."

34. Hula's decision to switch Silva's pay to commissions only was a unlawful, unilateral, and unenforceable modification to Silva's employment agreement, which provided that

any modification to her employment would only be effective if it is in writing and signed by both parties. Silva never consented to a switch to commission-only pay, but Hula unilaterally imposed commission-only pay upon her anyway.

35.     The regular verbal abuse on Monday morning phone meetings towards Silva continued after she was switched to this compensation scheme.  The abuse became so pervasive that, on or about June 5, 2018, the then-CEO of Hula, Joseph Commendatore ("Commendatore") issued to Robinson a written Letter of Discipline in part for his behavior during these weekly phone calls.  Commendatore charged that Robinson had been making fun of Silva's accent on these calls by rolling his eyes and laughing when Silva spoke, along with encouraging other members on the team to laugh along with him.  Commendatore also commended that he had previously warned Robinson of the unacceptability of his behavior.

36.     Further, throughout her employment, Hula has continually delayed in paying Silva the salary or commissions she is owed in a timely fashion. Silva was scheduled to be paid on the 15th and 30th of every month, just like every other employee of Hula.  However, Silva was never paid timely.   Instead, Silva repeatedly had to ask Robinson for payment of her salary or commissions, which were then delivered to her days or even weeks late on a regular basis for no reason other than to harass her and coerce her to resign.

37.     Additionally, despite the fact that Silva's employment agreement promised her a $400 monthly allowance for full medical and dental benefits 90 days after she started working for Hula, Hula never paid her any allowance for medical or dental benefits at all.  Silva has had to self-fund her medical insurance throughout her time at Hula; she paid for private insurance out-of-pocket until her salary was cut, and was then forced to apply for Medicaid.

38.     Despite the fact that Silva's employment agreement promised her a $100 monthly allowance for a company cell phone, Hula only ever paid Silva this allowance approximately 6 times throughout her employment.  Silva has had to self-fund her cell phone service for the rest of her time at Hula.

39.     Finally, Silva has had to incur numerous other financial expenses solely for the purpose of her employment with Hula, including but not limited to mileage fees, internet service, and maintaining a home office to carry out her job tasks.  Despite requesting reimbursement of expenses for these items from Hula, Hula has refused to reimburse Silva for any such expenses.

## FIRST CAUSE OF ACTION
### Discrimination Based on Race or National Origin in Violation of FEHA
#### (Alleged against all Defendants)

40.   Silva repeats and re-alleges all of the previous allegations herein by reference.

41.   FEHA broadly prohibits discrimination against an employee in compensation or in terms, conditions, or privileges of employment based on that employee's "race...color, [or] national origin."  Gov't Code § 12940(a).

42.   Silva is a member of a protected category under FEHA because of her race (Latino/Hispanic) and her national origin (citizen of Puerto Rico and Puerto Rican ethnic background).

43.   At no point between her joining Hula in 2014 and her accident in 2017 did Hula indicate that Silva's performance showed that she was underqualified for her job as Account Representative.

44.   The consistent and pervasive derogatory comments and abusive conditions that Defendants subjected Silva to, as described above, changed the terms, conditions, and privileges of Silva's employment with Hula.  Silva was prevented from carrying out her role at Hula as Account Representative, as the harassing conduct isolated and ostracized Silva from many of Hula's resources while she was recovering.

45.   Defendants later revoked Silva's base salary and instead paid her on a commission-only basis, again motivated by her ethnicity and origin, which further reduced the terms, conditions, and privileges of Silva's employment with Hula as she was pressed to forego a guaranteed income unless she met unreasonable sales standards that no other employee was asked to fulfill.

46.   Defendants subjected Silva to these consistent and pervasive derogatory comments, harassing conduct, and abusive conditions due to her race and national origin, as many of the derogatory comments focused on Silva's accent during meetings.

47.   Defendants subjected Silva to these conditions in an effort to diminish the terms, conditions, and privileges of Silva's role as Account Representative at Hula.

48.   The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

49.     As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

50.     In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### SECOND CAUSE OF ACTION
### Harassment and Hostile Work Environment Based on Race or National Origin in Violation of FEHA
### (Alleged against all Defendants)

51.     Silva repeats and re-alleges all of the previous allegations herein by reference.

52.     The FEHA specifically prohibits harassment based on, among other things, "race...color, [or] national origin." Gov. Code § 12940(j)(1). The FEHA more broadly prohibits harassment where the harassing conduct is sufficiently severe and pervasive to alter the conditions of an individual's employment and creates an abusive work environment.

53.     Silva is a member of a protected category under FEHA because of her race (Latino/Hispanic) and her national origin (citizen of Puerto Rico and Puerto Rican ethnic background).

54.     The consistent and/or pervasive derogatory comments, harassing conduct, and abusive conditions that Defendants subjected Silva to as described above are of the type that create an abusive work environment.

55.     Defendants subjected Silva to these consistent and pervasive derogatory comments, harassing conduct, and abusive conditions due to her race and national origin, as many of the derogatory comments focused on her accent during meetings.

56.     The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

57.     As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

58.     In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

**THIRD CAUSE OF ACTION**
**Failure to Pay the Minimum Wage in Violation of Labor Code § 1182.12**
**(Alleged against Hula)**

59.    Silva repeats and re-alleges all of the previous allegations herein by reference.

60.    Any employee in California should be paid a minimum wage of $9.00 per hour for work performed between July 1, 2014 and January 1, 2016 and $10.00 an hour for work performed between January 1, 2016 and December 31, 2016.   California Labor Code § 1182.12(a).  The minimum wage required to be paid to an employee from January 1, 2017 to the present incrementally increases depending on the amount of employees that an employer has.  *Id.*

61.    Hula annulled Silva's base salary in November 2017, paying only commission on sales for work thereafter.

62.    Without a base salary, the amount Hula paid to employee does not meet the minimum wage requirement.

63.    As a result of Hula's denial of a base salary, Silva has suffered significant damages in an amount to be proven at trial.

64.    In any action to recover wages because of the payment of a wage less than the minimum wage, an employee shall also be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.  Labor Code § 1194.2.  Accordingly, Silva is entitled to such liquidated damages in an amount to be proven at trial.

65.    Any employer who paid or causes to be paid to any employee a wage less than the minimum wage shall also be subject to civil penalties based upon each pay period for which the employee was underpaid and each subsequent violation for the same offense.  Labor Code § 1197.1.  Accordingly, Silva is entitled to all civil penalties proscribed by that statute as appropriate, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Failure to Pay Overtime Wages in**
**Violation of Labor Code §§ 510, 1194, and 1198, and IWC Wage Orders**
**(Alleged against all Defendants)**

66.    Silva repeats and re-alleges all of the previous allegations herein by reference.

67.    Labor Code § 510(a) provides that any work performed by a non-exempt employee in excess of 8 hours in a day or 40 hours in a week must be compensated at a rate not less than one-and-one half times the regular rate of pay for an employee.

68.     Labor Code § 1198 provides that the standard conditions of labor fixed by the wage orders are the standard condition of labor for employees, and that the "employment of any employee...under conditions of labor prohibited by the order is unlawful."

69.     Industrial Welfare Commission ("IWC") Wage Order No. 5, § 3(C) and 8 Cal. Code of Regulations 11040 require that overtime wages be paid for work in excess of 8 hours per day and 40 hours per week, or after 8 hours worked on the 7th consecutive day of any work week, at a rate of one and one-half of the employee's regular pay rate.

70.     Between approximately December 1, 2013 to the present, Hula has failed to compensate Silva for hours she worked in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week, as required by Labor Code § 510(a), IWC Wage Order No. 5, § 3(C), and 8 Cal Code of Regulations § 11050.

71.     Pursuant to Labor Code §§ 510 and 1194(a), Silva requests an award in the amount of unpaid overtime wages owed to him by Hula for work done between December 1, 2013 to the present in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week in an amount according to proof at trial.

**FIFTH CAUSE OF ACTION**
**Failure to Provide Rest Periods in**
**Violation of Labor Code §§ 226.7, 512, and 1198 and IWC Wage Orders**
**(Alleged against all Defendants)**

72.     Silva repeats and re-alleges all of the previous allegations herein by reference.

73.     Pursuant to Labor Code § 226.7(a) and IWC Wage Order No. 5, Hula was required to authorize and permit employees, including Silva, to take meal and/or rest breaks based upon the total amount of hours worked, at a rate of 30 minutes meal break and 10 minutes net rest time per 4 hours or major fraction thereof worked, with no deduction from wages.

74.     Pursuant to Labor Code § 226.7(b) and IWC Wage Order 5, Hula was required to pay employees, including Silva, one hour of pay at the employee's regular rate of pay for each work day that rest periods were required to be provided but were not provided.

75.     Labor Code § 1198 provides that the standard conditions of labor fixed by the wage orders are the standard condition of labor for employees and that the "employment of any employee...under conditions of labor prohibited by the order is unlawful.".

76.     Hula failed and refused to authorize and permit Silva to take a 30-minute uninterrupted meal breaks and/or 10-minute rest breaks for every 4 hours, or major fraction thereof, that she worked, in violation of Labor Code § 226.7(a) and IWC Wage Order 5.

77.     Hula further violated Labor Code § 226.7(b) and IWC Wage Order 5 by failing to pay Silva one hour of pay at her regular rate of pay for each workday that he was not provided a 30-minute meal break and/or 10-minute rest breaks.

78.     Silva requests an award in the amount of compensation of one hour at the regular rate of pay for each missed 30-minute meal break and/or 10-minute rest break denied in violation of § 226.7(a) and IWC Wage Order 5 in an amount according to proof at trial.

## SIXTH CAUSE OF ACTION
### Failure to Pay Timely Wages in Violation of the Labor Code
#### (Alleged against Hula)

79.     Silva repeats and re-alleges all of the previous allegations herein by reference.

80.     Wages are due to the employee twice a month — first between the first and tenth day of the month, then between the sixteenth and twenty-sixth day. California Labor Code § 204(a).

81.     Even if the commission would meet the minimum wage for the work performed following the removal of Silva's base salary in November 2017, Defendants have not paid this commission regularly and on time since.

82.     Consequently, on multiple occasions Defendants have failed to pay for work done by the required date.

83.     As a result of Defendants' inability to pay commission on time, Silva has suffered significant damages in an amount to be proven at trial.

84.     Further, any employer who fails to pay the wages of an employee as provided under Labor Code § 204(a) is subject to civil penalties based on the number and nature of each violation. Labor Code § 210. Silva asserts that she is entitled to all such penalties in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### Failure to Reimburse Employee Expenses in Violation of the Labor Code
#### (Alleged against all Defendants)

85.     Silva repeats and re-alleges all of the previous allegations herein by reference.

86.     California Labor Code § 2802 proscribed: "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct

consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer."

87.     Throughout her employment with Hula, Silva incurred multiple necessary expenditures in direct consequence of the discharge of her or her duties, including but not limited to mileage expenses to meet with clients and carry out job duties, the costs of a cell phone and cellular phone services, the costs of internet service, the costs of maintaining a home office, and the costs of obtaining medical insurance.

88.     Hula initially promised to provide Silva with allowances to pay for some or all of the above items, but Hula never made any payment to Silva to make these necessary expenditures.

89.     As a result of Defendants' inability or refusal to indemnify Silva for these necessary expenditures, Silva has suffered significant damages in an amount to be proven at trial and is entitled to payment compensating her for these necessary expenditures or losses and all other relief by law, including attorneys' fees and civil penalties for pursuing this action.

## EIGHTH CAUSE OF ACTION
### Unlawful, Unfair, and/or Fraudulent Business Practices
### in Violation of the Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*
### (Alleged against all Defendants)

90.     Silva repeats and re-alleges all of the previous allegations herein by reference.

91.     The California Business and Professions Code ("Bus. & Prof. Code") § 17200, *et seq.* (the "Unfair Business Practices Act") prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice.

92.     Bus. & Prof. Code § 17202 provides that "[N]otwithstanding Section 2289 of the Civil Code, specific or preventative relief may be granted to enforce a penalty, forfeiture, or penal law in case of unfair competition.

93.     Bus. & Prof. Code § 1703 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

94.     Bus. & Prof. Code § 17204 allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to prosecute a civil action for violation of this code.

95.     Bus. & Prof. Code § 17204 allows "any person acting for the interest of itself, its members or the general public" to prosecute a civil action for violation of the Unfair Business Practices Act.

96.     Labor Code § 90.5(a) states that it the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempts to gain competitive advantage at the expense of their workers by failing to comply with the minimum standards law."

97.     Beginning at an exact date unknown to Plaintiff, but at least since the date four years prior to filing this suit, Defendants had committed acts of unfair competition as defined by the Bus. & Prof. Code, by engaging in the unlawful, unfair, and fraudulent acts and practices described in this Complaint, including but not limited to:

  a. Breach of the employment agreement by not paying Silva her wages and/or any benefits and fringe benefits provided to her under that agreement;

  b. Violations of Labor Code § 1182.12 pertaining to compensating employees for at least the minimum wage;

  c. Violations of Labor Code §§ 510, 1194, and 1198, and IWC Wage Orders pertaining to overtime compensation;

  d. Violations of Labor Code §§ 226.7, 512, and 1198, and IWC Wage Orders pertaining to meal and rest periods;

  e. Violations of Labor Code § 226, pertaining to itemized statements of wages; and

  f. Violation of Labor Code § 2082, pertaining to the obligation to reimburse employee expenses.

98.     The violation of the above laws and regulations, as well as of fundamental California public policies protecting workers, serve as unlawful predicate acts and practices for purposes of Bus. & Prof. Code §§ 17200 and 17203, *et seq.*

99.     The acts and practices described above have allowed Defendant to gain an unfair competitive advantage over law-abiding employers and competitors.

100.   Accordingly, the acts and practices described above constitute unfair, unlawful and fraudulent business practices within the meaning of Bus. & Prof. Code §§ 17200 and 17203, *et seq.*

101.   As a direct and proximate result of the acts described herein, Plaintiff has been denied compensation in an amount to be proven at trial.

102.   Plaintiff is entitled to restitution pursuant to Bus. & Prof. Code § 17203 for all wages and other compensation unlawfully withheld from Plaintiff during the four-year period prior to the filing of the complaint.

**NINTH CAUSE OF ACTION**
**Discrimination Based on Race or National Origin**
**in Violation of Title VII of the Civil Rights Act of 1964**
**(Alleged against all Defendants)**

103.   Silva repeats and re-alleges all of the previous allegations herein by reference.

104.   Title VII of the Civil Rights Act of 1964 ("Title VII") broadly prohibits discrimination against an employee in compensation or in "terms, conditions, or privileges of employment" based on that employee's "race...color, [or] national origin." 42 U.S.C. § 2000e-2(a)(1).

105.   Silva is a member of a protected category under Title VII because of her race (Latino/Hispanic) and her national origin (citizen of Puerto Rico and Puerto Rican ethnic background).

106.   At no point between her joining Hula in 2014 and her accident in 2017 did Hula indicate that Silva's performance showed that she was underqualified for her job as Account Representative.

107.   The consistent and pervasive derogatory comments and abusive conditions that Defendants subjected Silva to, as described above, changed the terms, conditions, and privileges of Silva's employment with Hula.  Silva was prevented from carrying out her role at Hula as Account Representative, as the harassing conduct isolated and ostracized Silva from many of Hula's resources while she was recovering.

108.   Defendants later revoked Silva's base salary and instead paid her on a commission-only basis, again motivated by her ethnicity and origin, which further reduced the terms, conditions, and privileges of Silva's employment with Hula as she was pressed to forego

a guaranteed income unless she met unreasonable sales standards that no other employee was asked to fulfill.

109.   Defendants subjected Silva to these consistent and pervasive derogatory comments, harassing conduct, and abusive conditions due to her race and national origin, as many of the derogatory comments focused on Silva's accent during meetings.

110.   Defendants subjected Silva to these conditions in an effort to diminish the terms, conditions, and privileges of Silva's role as Account Representative at Hula.

111.   The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

112.   As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

113.   In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### TENTH CAUSE OF ACTION
### Harassment Based on Race or National Origin
### in Violation of Title VII of the Civil Rights Act of 1964
### (Alleged against all Defendants)

114.   Silva repeats and re-alleges all of the previous allegations herein by reference.

115.   Title VII broadly prohibits discrimination against an employee in compensation or in "terms, conditions, or privileges of employment" based on that employee's "race…color, [or] national origin." 42 U.S.C. § 2000e-2(a)(1).

116.   42 U.S.C. § 1981 prohibits racial discrimination, which includes hostile work environment and harassment claims. *Manatt v. Bank of America, N.A.* (9th Cir. 2003) 339 F.3d 792, 798.  Federal courts have long recognized that a work environment heavily charged with racial or racial discrimination constitutes harassment that violated Title VII. *See Meritor Sav. Bank, FSB v. Vinson* (1986) 477 U.S. 57, 66.  An employer has a duty to prevent and remedy instances of racial and national origin harassment, and one who fails to remedy such problems despite having actual or constructive knowledge of them may be liable for harassment even if a formal policy against harassment exists. *DeGrace v. Rumsfeld* (1st Cir. 1980) 614 F.2d 796, 803.

117.   Silva is a member of a protected category under Title VII because of her race (Latino/Hispanic) and her national origin (citizen of Puerto Rico and Puerto Rican ethnic background).

118.   At no point between her joining Hula in 2014 and her accident in 2017 did Hula indicate that Silva's performance showed that she was underqualified for her job as Account Representative.

119.   The consistent and/or pervasive derogatory comments and abusive conditions that Defendants subjected Silva to, as described above, were clearly based on her race, ethnicity, and national origin, and were sufficiently severe or pervasive enough to alter the conditions of her employment.  Silva was prevented from carrying out her role at Hula as Account Representative, as the harassing conduct isolated and ostracized Silva from many of Hula's resources while she was recovering.

120.   Defendants later revoked Silva's base salary and instead paid her on a commission-only basis, again motivated by her ethnicity and origin, which further reduced the terms, conditions, and privileges of Silva's employment with Hula as she was pressed to forego a guaranteed income unless she met unreasonable sales standards that no other employee was asked to fulfill.

121.   Defendants subjected Silva to these consistent and pervasive derogatory comments, harassing conduct, and abusive conditions due to her race and national origin, as many of the derogatory comments focused on Silva's accent during meetings.

122.   Defendants subjected Silva to these conditions in an effort to diminish the terms, conditions, and privileges of Silva's role as Account Representative at Hula.

123.   The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

124.   Defendants' conduct, as described above, represents a concerted pattern of harassment of a repeated, routine or generalized nature and created an unreasonably abusive or offensive work environment that adversely affected Silva's ability to do her job.  Ironically, Defendants then used Silva's lack of ability to do her job properly as a pretext for reducing her wages.

125.    As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

126.    In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial

## ELEVENTH CAUSE OF ACTION
### Failure to Pay Minimum Wage in Violation of the Fair Labor Standards Act
### (Alleged against Hula)

127.    Silva repeats and re-alleges all of the previous allegations herein by reference.

128.    Under the Fair Labor Standards Act, since May 25, 2009, employees must be paid a minimum of $7.25 an hour. 29 U.S.C. § 206(a)(1)(C).

129.    Defendants annulled Silva's base salary in November 2017, paying only commission on sales for work thereafter.

130.    Without a base salary, Defendants cannot guarantee that the amount paid to Silva meets the minimum wage requirement.

131.    Commissions can count towards fulfilling the minimum wage requirement only if it means that the employee "actually received the minimum wage for each hour worked within each separate pay period." *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir. 1985).

132.    Because Defendants have delayed payment of commission owed to Silva, even if that commission would be higher than the minimum wage for the hours worked, Silva did not "actually" receive any payments that could contribute to the wage required by the Fair Labor Standards Act.

133.    As a result of Defendants' denial of base salary and inability to pay commission on time, Silva has suffered significant damages in an amount to be proven at trial.

134.    Further, any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employee in the amount of their unpaid minimum wage or overtime compensation, and in an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). Accordingly, Silva is entitled to such liquidated damages in an amount according to proof.

//
//

## TWELFTH CAUSE OF ACTION
### Failure to Pay Overtime Wages in Violation of the Fair Labor Standards Act
### (Alleged against all Defendants)

135.   Silva repeats and re-alleges all of the previous allegations herein by reference.

136.   29 U.S.C. § 207 provides that any work performed by a non-exempt employee in excess of 8 hours in a day or 40 hours in a week must be compensated at a rate not less than one-and-one half times the regular rate of pay for an employee.

137.   Between approximately December 1, 2013 and the present, Hula failed to compensate Silva for hours he worked in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week, as required by to 29 U.S.C. § 207 and the Fair Labor Standards Act, 29 U.S.C. § 203, et seq.

138.   Pursuant to 29 U.S.C. § 207 and the Fair Labor Standards Act, 29 U.S.C. § 203, *et seq.*, Silva requests an award in the amount of unpaid overtime wages owed to her by Hula for work done between December 1, 2013 to the present in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week in an amount according to proof at trial.

139.   Further, any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employee in the amount of their unpaid minimum wage or overtime compensation, and in an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). Accordingly, Silva is entitled to such liquidated damages in an amount according to proof.

## THIRTEENTH CAUSE OF ACTION
### Failure to Pay Wages on Time in Violation of the Fair Labor Standards Act
### (Alleged against Hula)

140.   Silva repeats and re-alleges all of the previous allegations herein by reference.

141.   Under the Fair Labor Standards Act, a valid salary under the Act must be "regularly and consistently paid," or, in other words, paid on time. *See Martin v. U.S.*, 1:13-cv-00834-PEC (Fed. Cl. July 13, 2014).

142.   Even if the commissions paid by Hula to Silva would meet the required minimum wage for the work performed following the removal of Silva's base salary in November 2017, Defendants have not paid this commission "regularly and consistently," or on time, since.

143.   Consequently, on multiple occasions Defendants have failed to pay for work done by the required date.

144. As a result of Defendants' inability to pay commissions on time, Silva has suffered significant damages in an amount to be proven at trial.

145. Further, any employer who violates the Fair Labor Standards Act in this manner shall be liable to the employee in the amount of their unpaid compensation, and in an additional equal amount as liquidated damages. 29 U.S.C. § 216(b); *See Martin v. U.S.*, 1:13-cv-00834-PEC (Fed. Cl. July 13, 2014). Accordingly, Silva is entitled to such liquidated damages in an amount according to proof.

**FOURTEENTH CAUSE OF ACTION**
**Discrimination Based on Race or National Origin**
**in Violation of the New Jersey Law Against Discrimination**
**(Alleged against all Defendants)**

146. Silva repeats and re-alleges all of the previous allegations herein by reference.

147. New Jersey law applies to any causes of action that arose after Silva moved to and began working out of New Jersey in October 2018.

148. The New Jersey Law Against Discrimination broadly prohibits discrimination against an employee in compensation or in terms, conditions, or privileges of employment based on that employee's "race...color, [or] national origin[.]" N.J. Stat. § 10:5-12(a).

149. Silva is a member of a protected category under the New Jersey Law Against Discrimination because of her race (Latino/Hispanic) and her national origin (citizen of Puerto Rico and Puerto Rican ethnic background).

150. At no point between her joining Hula in 2014 and her accident in 2017 did Hula indicate that Silva's performance showed that she was underqualified for her job as Account Representative.

151. The consistent and pervasive derogatory comments and abusive conditions that Defendants subjected Silva to, as described above, were clearly based on her race, ethnicity, and national origin, and were sufficiently severe or pervasive enough to alter the conditions of her employment. Silva was prevented from carrying out her role at Hula as Account Representative, as the harassing conduct isolated and ostracized Silva from many of Hula's resources while she was recovering.

152. Defendants later revoked Silva's base salary and instead paid her on a commission-only basis, again motivated by her ethnicity and origin, which further reduced the terms, conditions, and privileges of Silva's employment with Hula as she was pressed to forego

1   a guaranteed income unless she met unreasonable sales standards that no other employee was
2   asked to fulfill.

3   153.   Defendants subjected Silva to these consistent and pervasive derogatory
    comments, harassing conduct, and abusive conditions due to her race and national origin, as many
4   of the derogatory comments focused on Silva's accent during meetings.

5   154.   Defendants subjected Silva to these conditions in an effort to diminish the terms,
6   conditions, and privileges of Silva's role as Account Representative at Hula.

7   155.   The abusive conduct Silva was subjected to increased and continued despite then-
8   CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

9   156.   As a result of Defendants' harassing conduct, Silva has suffered significant
10  damages in an amount to be proven at trial, and has also suffered severe emotional distress,
11  anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

12  157.   In doing the acts herein alleged, Defendants acted with oppression, fraud or
    malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to
13  punitive damages in an amount according to proof at the time of trial.
14  //

15  ### FIFTEENTH CAUSE OF ACTION
    **Harassment Based on Race or National Origin**
16  **in Violation of the New Jersey Law Against Discrimination**
    **(Alleged against Hula)**
17

18  158.   Silva repeats and re-alleges all of the previous allegations herein by reference.

19  159.   New Jersey law applies to any causes of action that arose after Silva moved to and
    began working out of New Jersey in October 2018.
20

21  160.   The New Jersey Law Against Discrimination broadly prohibits discrimination
    against an employee in compensation or in terms, conditions, or privileges of employment based
22  on that employee's "race...color, [or] national origin[.]" N.J. Stat. § 10:5-12(a). This prohibition
23  includes and encompasses a prohibition against workplace harassment or the maintenance of a
24  hostile work environment on the basis of an employee's race, color, or national origin. *See Smith*
25  *v. Exxon Mobil Corp.* (N.J. 2005) 374 F.Supp.2d 406.

26  161.   At no point between her joining Hula in 2014 and her accident in 2017 did Hula
27  indicate that Silva's performance showed that she was underqualified for her job as Account
    Representative.
28

162.   The consistent and/or pervasive derogatory comments and abusive conditions that Defendants subjected Silva to, as described above, were clearly based on her race, ethnicity, and national origin, and were sufficiently severe or pervasive enough to alter the conditions of her employment. Silva was prevented from carrying out her role at Hula as Account Representative, as the harassing conduct isolated and ostracized Silva from many of Hula's resources while she was recovering.

163.   Defendants later revoked Silva's base salary and instead paid her on a commission-only basis, again motivated by her ethnicity and origin, which further reduced the terms, conditions, and privileges of Silva's employment with Hula as she was pressed to forego a guaranteed income unless she met unreasonable sales standards that no other employee was asked to fulfill.

164.   Defendants subjected Silva to these consistent and pervasive derogatory comments, harassing conduct, and abusive conditions due to her race and national origin, as many of the derogatory comments focused on Silva's accent during meetings.

165.   Defendants subjected Silva to these conditions in an effort to diminish the terms, conditions, and privileges of Silva's role as Account Representative at Hula.

166.   The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

167.   Defendants' conduct, as described above, represents a concerted pattern of harassment of a repeated, routine or generalized nature and created an unreasonably abusive or offensive work environment that adversely affected Silva's ability to do her job.  Ironically, Defendants then used Silva's lack of ability to do her job properly as a pretext for reducing her wages.

168.   As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

169.   In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

//
//

## SIXTEENTH CAUSE OF ACTION
### Failure to Pay Minimum Wage in Violation of the New Jersey Wage and Hour Law
(Alleged against Hula)

170.   Silva repeats and re-alleges all of the previous allegations herein by reference.

171.   New Jersey law applies to any causes of action that arose after Silva moved to and began working out of New Jersey in October 2018.

172.   The New Jersey Wage and Hour Law mandates a minimum wage of $8.85 per hour. N.J. Stat. § 34:11-56a4(a).

173.   Defendants annulled Silva's base salary in November 2017, paying only commission on sales for work thereafter.

174.   Without a base salary, the amount paid to employee does not meet the minimum wage requirement.

175.   As a result of Defendants' denial of base salary, Silva has suffered significant damages in an amount to be proven at trial.

176.   Further, N.S. Stat § 34:11-56a25 provides for civil penalties in the event an employer fails to pay less than the fair minimum wage of not more than 200 percent of the amount unpaid as liquidated damages.  Accordingly, Silva is entitled to an award of liquidated damages under this statute in an amount according to proof.

//

## SEVENTEENTH CAUSE OF ACTION
### Failure to Pay Overtime Wages in Violation of the New Jersey Wage and Hour Law
(Alleged against all Defendants)

177.   Silva repeats and re-alleges all of the previous allegations herein by reference.

178.   The New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, *et seq.*, provides that that any work performed by a non-exempt employee in excess of 40 hours in a week must be compensated at a rate not less than one-and-one half times the regular hourly rate of pay for an employee. N.J.S.A. 34:11-56a4.

179.   Between approximately December 1, 2013 and the present, Hula has failed to compensate Silva for hours he worked in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week, as required by the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, et seq.

180.   Pursuant to the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, et seq., Silva requests an award in the amount of unpaid overtime wages owed to her by Hula for work done

between December 1, 2013 to the present in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week in an amount according to proof at trial.

## EIGHTEENTH CAUSE OF ACTION
### Failure to Pay Wages on Time in Violation of the New Jersey Wage and Hour Law
### (Alleged against Hula)

181.    Silva repeats and re-alleges all of the previous allegations herein by reference.

182.    New Jersey law applies to any causes of action that arose after Silva moved to and began working out of New Jersey in October 2018.

183.    The New Jersey Wage and Hour Law requires wages to be paid twice a month on days predetermined in the employer. N.J. Stat. § 34:11-56a4.

184.    Even if the commission would meet the minimum wage for the work performed following the removal of Silva's base salary in November 2017, Defendants have not paid this commission regularly and on time since.

185.    Consequently, on multiple occasions Defendants have failed to pay for work done by the required date.

186.    As a result of Defendants' inability to pay commission on time, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

187.    In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

188.    Further, N.S. Stat § 34:11-56a25 provides for civil penalties in the event an employer fails to pay less than the fair minimum wage of not more than 200 percent of the amount unpaid as liquidated damages. Accordingly, Silva is entitled to an award of liquidated damages under this statute in an amount according to proof.

## NINTEENTH CAUSE OF ACTION
### Discrimination Based on Race or National Origin in Violation of Puerto Rico Act No. 100
### (Alleged against all Defendants)

189.    Silva repeats and re-alleges all of the previous allegations herein by reference.

190.    Puerto Rico law applies to any causes of action that arose when Silva worked out of Puerto Rico, prior to Silva moving to New Jersey in October 2018.

191.    Puerto Rico Act No. 100 broadly prohibits discrimination against an employee in compensation or in terms, conditions, or privileges of employment based on that employee's "race, color…[or] national origin[.]" 29 L.P.R.A. § 146.

192.    Silva is a member of a protected category under Puerto Rico Act 100 because of her race (Latino/Hispanic) and her national origin (citizen of Puerto Rico and Puerto Rican ethnic background).

193.    At no point between her joining Hula in 2014 and her accident in 2017 did Hula indicate that Silva's performance showed that she was underqualified for her job as Account Representative.

194.    The consistent and pervasive derogatory comments and abusive conditions that Defendants subjected Silva to, as described above, changed the terms, conditions, and privileges of Silva's employment with Hula.  Silva was prevented from carrying out her role at Hula as Account Representative, as the harassing conduct isolated and ostracized Silva from many of Hula's resources while she was recovering.

195.    Defendants later revoked Silva's base salary and instead paid her on a commission-only basis, again motivated by her ethnicity and origin, which further reduced the terms, conditions, and privileges of Silva's employment with Hula as she was pressed to forego a guaranteed income unless she met unreasonable sales standards that no other employee was asked to fulfill.

196.    Defendants subjected Silva to these consistent and pervasive derogatory comments, harassing conduct, and abusive conditions due to her race and national origin, as many of the derogatory comments focused on Silva's accent during meetings.

197.    Defendants subjected Silva to these conditions in an effort to diminish the terms, conditions, and privileges of Silva's role as Account Representative at Hula.

198.    The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

199.    As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

200.   In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### TWENTIETH CAUSE OF ACTION
**Harassment Based on Race or National Origin in Violation of Puerto Rico Act No. 100**
**(Alleged against Hula)**

201.   Silva repeats and re-alleges all of the previous allegations herein by reference.

202.   Puerto Rico law applies to any causes of action that arose when Silva worked out of Puerto Rico, prior to Silva moving to New Jersey in October 2018.

203.   Puerto Rico Act No. 100 broadly prohibits discrimination against an employee in compensation or in terms, conditions, or privileges of employment based on that employee's "race, color…[or] national origin[.]" 29 L.P.R.A. § 146.   This prohibition includes and encompasses a prohibition against workplace harassment or the maintenance of a hostile work environment on the basis of an employee's race, color, or national origin

204.   Silva is a member of a protected category under Puerto Rico Act 100 because of her race (Latino/Hispanic) and her national origin (citizen of Puerto Rico and Puerto Rican ethnic background).

205.   At no point between her joining Hula in 2014 and her accident in 2017 did Hula indicate that Silva's performance showed that she was underqualified for her job as Account Representative.

206.   The consistent and/or pervasive derogatory comments and abusive conditions that Defendants subjected Silva to, as described above, were clearly based on her race, ethnicity, and national origin, and were sufficiently severe or pervasive enough to alter the conditions of her employment.  Silva was prevented from carrying out her role at Hula as Account Representative, as the harassing conduct isolated and ostracized Silva from many of Hula's resources while she was recovering.

207.   Defendants later revoked Silva's base salary and instead paid her on a commission-only basis, again motivated by her ethnicity and origin, which further reduced the terms, conditions, and privileges of Silva's employment with Hula as she was pressed to forego a guaranteed income unless she met unreasonable sales standards that no other employee was asked to fulfill.

208.   Defendants subjected Silva to these consistent and pervasive derogatory comments, harassing conduct, and abusive conditions due to her race and national origin, as many of the derogatory comments focused on Silva's accent during meetings.

209.   Defendants subjected Silva to these conditions in an effort to diminish the terms, conditions, and privileges of Silva's role as Account Representative at Hula.

210.   The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

211.   Defendants' conduct, as described above, represents a concerted pattern of harassment of a repeated, routine or generalized nature and created an unreasonably abusive or offensive work environment that adversely affected Silva's ability to do her job.  Ironically, Defendants then used Silva's lack of ability to do her job properly as a pretext for reducing her wages.

212.   As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

213.   In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

## TWENTY-FIRST CAUSE OF ACTION
### Failure to Pay Minimum Wage in Violation of Puerto Rico Minimum Wage, Vacation and Sick Leave Law
### (Alleged against Hula)

214.   Silva repeats and re-alleges all of the previous allegations herein by reference.

215.   Puerto Rico law applies to any causes of action that arose when Silva worked out of Puerto Rico, prior to Silva moving to New Jersey in October 2018.

216.   By the Puerto Rico Minimum Wage, Vacation and Sick Leave Law, employees are entitled to the same minimum wage as required under federal law. 29 L.P.R.A. § 250.

217.   Defendants annulled Silva's base salary in November 2017, paying only commission on sales for work thereafter.

218.   Without a base salary, the amount paid to employee does not meet the minimum wage requirement.

219.     As a result of Defendants' denial of base salary, Silva has suffered significant damages in an amount to be proven at trial.

## TWENTY-SECOND CAUSE OF ACTION
### Failure to Provide Overtime Wages in Violation of Puerto Rico Act No. 379
(Alleged against Hula)

220.     Silva repeats and re-alleges all of the previous allegations herein by reference.

221.     Puerto Rico law applies to any causes of action that arose when Silva worked out of Puerto Rico, prior to Silva moving to New Jersey in October 2018.

222.     Puerto Rico Act No. 271, 29 L.P.R.A. § 271, et seq. provides that that any work performed by a non-exempt employee in excess of 40 hours in a week must be compensated at a rate not less than one-and-one half times the regular hourly rate of pay for an employee.  29 L.P.R.A. § 274.

223.     Between approximately December 1, 2013 and the present, Hula has failed to compensate Silva for hours he worked in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week, as required by Puerto Rico Act No. 271.

224.     Pursuant to Puerto Rico Act No. 271, 29 L.P.R.A. § 271, et seq., Silva requests an award in the amount of unpaid overtime wages owed to her by Hula for work done between December 1, 2013 to the present in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week in an amount according to proof at trial.

225.     Further, 29 L.P.R.A. § 271 provides for civil penalties in the event an employer fails to comply with the law regarding the payment of regular and overtime wages.  Accordingly, Silva is entitled to an award of liquidated damages under this statute in an amount according to proof.

## TWENTY-THIRD CAUSE OF ACTION
### Failure to Pay Timely Wages in Violation of Puerto Rico Minimum Wage,
### Vacation and Sick Leave Law
(Alleged against Hula)

226.     Silva repeats and re-alleges all of the previous allegations herein by reference.

227.     Puerto Rico law applies to any causes of action that arose when Silva worked out of Puerto Rico, prior to Silva moving to New Jersey in October 2018.

228.     The Puerto Rico Minimum Wage, Vacation and Sick Leave Law requires wages to be paid at no more than 15-day intervals. 29 L.P.R.A. § 173.

229. Even if the commission would meet the minimum wage for the work performed following the removal of Silva's base salary in November 2017, Defendants have not paid this commission regularly and on time since.

230. Consequently, on multiple occasions Defendants have failed to pay for work done by the required date.

231. As a result of Defendants' inability to pay commission on time, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

232. In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

## TWENTY-FOURTH CAUSE OF ACTION
### Breach of Contract Under California, New Jersey, and/or Puerto Rico Laws
### (Alleged against Hula)

233. Silva repeats and re-alleges all of the previous allegations herein by reference.

234. Silva and Defendant entered into a written agreement for her services to Hula, the employment agreement. [Exhibit 1.] The employment agreement is a valid, legally binding contract between Silva and Defendant.

235. Silva has performed all of her obligations under the employment agreement.

236. Defendant has failed to perform all of its obligations under the employment agreement. The employment agreement asserted that Silva was a "1099 contractor at will," and that she would receive a flat salary plus commissions based on her sales, a company cell phone issued at a maximum of $100 per month, $400 towards full medical and dental benefits 90 days after starting, and would be given 5 paid vacation days per year and 5 personal sick days per year commencing after the first 6 months of her employment.

237. However, Defendant required Silva to perform as a *de facto* employee of Hula throughout her time there, to the present. At all relevant times, Hula controlled, and still controls, the tasks that Silva performs for Hula and all business aspects of her job at Hula. This constitutes a breach of the employment agreement.

238. Further, whether Silva was a Hula employee or an independent contractor, Defendants breached the employment agreement when it decided to Silva's pay to commissions

only.  This was a unlawful, unilateral, and unenforceable modification to Silva's employment agreement, which provided that any modification to the agreement would only be effective if it is in writing and signed by both parties.  Silva never consented to a switch to commission-only pay, and no writing was ever executed by both parties regarding the switch.  Instead, Hula unilaterally imposed commission-only pay upon her unilaterally and without Silva's authorization or consent.

239.    Further, Silva's employment agreement promised her a $400 monthly allowance for full medical and dental benefits 90 days after she started working for Hula.  However, Hula never paid her any allowance for medical or dental benefits at all.  This constitutes a breach of the employment agreement.

240.    Further, Silva's employment agreement promised her a $100 monthly allowance for a company cell phone.  Hula only ever paid Silva this allowance approximately 6 times throughout her employment.  This constitutes a breach of the employment agreement.

241.    Defendants' actions, as described above, directly and proximately have caused and continue to cause Plaintiff to suffer damages in an amount to be proven at trial.

242.    The employment agreement contains no choice of law provision, but that is superfluous as the employment agreement is valid and enforceable under California, New Jersey, and/or Puerto Rico law, and Defendants' conduct constitutes a breach of contract under all such laws.

## JURY DEMAND

243.    Silva hereby demands a trial by jury in this action.

## PRAYER FOR RELIEF

Wherefore, Silva prays for the following relief:

1.    Actual damages and/or restitution;

2.    General damages;

3.    Punitive damages;

4.    Statutory damages and penalties;

5.    Reasonable attorneys' fees as permitted by law;

6.    Costs of the suit incurred herein as permitted by law; and

7.    All other further relief as this Court deems just and proper.

1   Dated: November 4, 2019                          PERETZ & ASSOCIATES

2

3

4                                            By: _____

5                                                Yosef Peretz
                                                 David Garibaldi
6                                                Attorneys for Plaintiff
                                                 MARTHA SILVA
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

November 4, 2019

David Garibaldi
22 Battery Street, Suite 200
San Francisco, California 94111

RE:  **Notice to Complainant's Attorney**
DFEH Matter Number: 201911-08157104
Right to Sue: Silva / Hula Networks, Inc.

Dear David Garibaldi:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

November 4, 2019

RE:   **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 201911-08157104
Right to Sue: Silva / Hula Networks, Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**
Martha Silva

DFEH No. 201911-08157104

Complainant,

vs.

Hula Networks, Inc.
929 Berryessa Rd Suite 10
San Jose, California 95133

Respondents

---

1. Respondent **Hula Networks, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Martha Silva**, resides in the City of **Fresno** State of **California.**

3. Complainant alleges that on or about **November 4, 2019**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's race, national origin (includes language restrictions), color.

**Complainant was discriminated against** because of complainant's race, national origin (includes language restrictions), color and as a result of the discrimination was reprimanded, denied equal pay, demoted, denied any employment benefit or privilege.

**Additional Complaint Details:** Complainant was discriminated against, harassed, and put in a hostile work environment at Hula Networks, Inc. because of her race, color, and national origin. her voice and accent were mocked on various company conference calls by Hula Networks, Inc.'s officers and directors, and employees. Eventually, her employment agreement and pay structure was changed without her required consent solely on the basis of her race, color, and national origin. Hula Networks, Inc. also failed to pay her the minimum wage, the proper overtime wage,

Date Filed: November 4, 2019

1    failed to pay her wages timely, and failed to give her proper meal and rest breaks as
2    required by law.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27                                          -2-
                            Complaint – DFEH No. 201911-08157104
28   Date Filed: November 4, 2019

1  VERIFICATION

2  I, **David Garibaldi**, am the **Attorney** in the above-entitled complaint.  I have read the
3  foregoing complaint and know the contents thereof.  The matters alleged are based
   on information and belief, which I believe to be true.

4
   On November 4, 2019, I declare under penalty of perjury under the laws of the State
5  of California that the foregoing is true and correct.

6
                                              **San Francisco, California**
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                    -3-
                         *Complaint – DFEH No. 201911-08157104*
28  Date Filed: November 4, 2019

**EXHIBIT B**



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

November 4, 2019

Martha Silva
New Jersey
Fresno, California

RE:     **Notice of Case Closure and Right to Sue**
        DFEH Matter Number: 201911-08157104
        Right to Sue: Silva / Hula Networks, Inc.

Dear Martha Silva,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective November 4, 2019 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

**EXHIBIT C**



**Contractor Agreement**

1. This Agreement is made and entered into this __1st__ day of December 2013 by and between Hula Networks Inc., hereafter "the Company" and Martha Silvia, hereafter "Contractor."

2. **Term of Employment.** This Agreement begins on Dec 1, 2013. Martha is being hired as a Contractor as a 1099 contractor at will, which means that either the Company or Contractor may terminate this Agreement at any time for any reason or no reason and with or without notice. Employee's employment with the Company is "at will" and is terminable "at will" by the Company or Contractor with or without cause. No person or entity has any authority to alter the at-will status of Contractor at any time. No statement or writing made in connection with performance reviews, recommendations, discipline, interviews, discussions, promotion, transfer or in any other context shall result in any abrogation of or change in the at will nature of the employment relationship between Contractor and the Company.

3. **Commission Compensation.** Contractor shall receive the following as applicable to their monthly sales quota.

4. **Sales Quota** will be set at $2,400,000 revenue with $50,000 a month GP for the first year. After 12 months the quota will be reviewed and adjusted as appropriate.

   Hardware/Service Contracts............. 25% of total GP

   **Inventory Buys ..............15% of GP is paid to sales person when sold by any Hula Networks representative other than the sales person who found the equipment or, 25% of GP if individual who found equipment sells the equipment him or herself. (All product bought goes immediately into general inventory available for resale by entire team)**

5. All used deals must be at a minimum of 30% GP. All deals under 30% GP will be evaluated and paid upon a case-by-case basis. All "new deals" must be a minimum of 20% GP. All new deals under 20% will be evaluated and paid upon a case by case basis. All deals are considered to be a _used deal_ unless more than 75% of revenue is from new equipment sales. A _new deal_ will be considered by any deal that has over 75% of revenue from new equipment. Thus any deal that has less than 75% revenue from new equipment sales is considered to be a used deal and must have 30% GP

6. **Commission Guarantee** Contractor shall receive $3,500.00 commission guarantee for the first six months of employment or commissions (whichever is greater) ($1,750.00 paid on the 1st and the 15th of each month, or commissions which ever is greater). After the first six months the employee shall receive $2,500 commission guarantee or commissions (whichever is greater) ($1,250.00 paid on the 1st and the 15th of each month, or commissions whichever is greater)

7. **Gross Profit** is defined as total revenue minus total cost of goods sold. (COGS = taxes, cost of product, excessive shipping expense, commissions for finder's fees paid)

8   If Net terms are granted to a customer and the accounts receivable become more than 15 days past due commissions will be paid on ¾75 of the gross profit

9   Any necessary commission changes due to RMA s will be deducted from the Contractor s commissions on the following pay period or final paycheck

10  The commission is paid to the Contractor in the pay period following the receipt of payment in full of the customer invoice  Commissions are paid at the 1st and 15ᵗ of each month

11  We want to empower you to implement and achieve your own goals  which automatically achieve those of the organization  It is our goal to have every Technology Specialist / Account Manager at Hula Networks performs at PAR for the industry  PAR is considered to be

- $200,000 in sales Revenue each month (month one and two will be ramp up period)
- $50,000 in gross profit a Month
- $600,000 in sales revenue each quarter
- $150,000 in gross profit each quarter

7   **Customer meetings:** in order to be successful in sales it is imperative that Martha is in front of customers with the appropriate OEM partner  Thus the minimum amount of in person meetings shall be five a week

8   <u>Cell phone</u> Company issued a maximum of $100 per month

9   <u>Vacation and Sick days</u> 5 days paid vacation per year and 5 personal/sick days per year  For a combined total of 10 days   No Vacation Days-Until first 6 months of employment is completed

10  <u>Paid Holidays</u> 7 paid holidays  New Year's Day   Memorial Day  Independence Day  Labor Day  Thanksgiving Day  Christmas Day  New Year's Day

11  <u>Health Benefits</u> Contractor will receive $400 00 towards full medical & dental benefits (discussed upon acceptance) **Eligible 90 days after starting**

12  <u>Fiduciary Duty of Contractor.</u>  During Contractor s employment with the Company  Contractor shall not directly or indirectly either as an employee  employer  consultant  agent or in any other individual or representative capacity  engage or participate in any business that is in competition in any manner whatsoever with the business of the Company

13  <u>Modification of Agreement</u>  Any modification of this Agreement will be effective only if it is in writing and signed by both parties and their representatives having actual authority to bind them

14  <u>Entire Agreement of the Parties</u>  This Agreement supersedes any and all agreements  either oral or written  between the parties with respect to the rendering of services by Contractor for the Company and contains all the covenants and agreements between the parties with respect to the rendering of such services  Each party to this Agreement acknowledges that no representations  inducements  promises or agreements  oral or otherwise  have been made by any party  or by anyone acting on behalf of any party  which is not embodied herein  and that no other agreement  statement  or promise not contained in this Agreement shall be valid or binding  <u>Contractor acknowledges that he/she has received a current copy of all the Company policies currently in effect and shall review and be familiar with all such policies</u>  In the event of any conflict between the provisions of this Agreement and any other Company policy now or hereafter in effect  the provisions of this Agreement shall prevail

15  Hula Networks will not tolerate employees or Contractors using prior employee proprietary information to enhance Hula Networks business   This includes (but not limited to) customer lists, customer databases, pricing information  etc

16  _____
    Martha Silvia (Contractor)

    Steve Robinson (Hula Networks)

17  _____
    Signature

    Signature _____

18  Dated: _____

    Dated _____

**EXHIBIT B**

System System
**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| PERETZ & ASSOCIATES<br>22 Battery St #200<br>San Francisco, CA 94111<br>    TELEPHONE NO:  415-732-3777 EXT 101      FAX NO *(Optional)*:<br> E-MAIL ADDRESS *(Optional)*:<br>    ATTORNEY FOR *(Name)*: | **Electronically Filed<br>by Superior Court of CA,<br>County of Santa Clara,<br>on 1/2/2020 12:42 PM<br>Reviewed By: System System<br>Case #19CV357985<br>Envelope: 3831723** |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Santa Clara | |
|---|---|
| STREET ADDRESS:  191 N. FIRST ST<br>MAILING ADDRESS:<br>CITY AND ZIP CODE:  San Jose<br>BRANCH NAME:  SANTA CLARA COUNTY SUPERIOR | |

| PLAINTIFF / PETITIONER:  MARTHA SILVA<br>DEFENDANT / RESPONDENT:  HULA NETWORKS, INC | CASE NUMBER:<br>19CV357985 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>4115955 |

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.
2.  I served copies of:
    a. [X]  summons
    b. [X]  complaint
    c. [X]  Alternative Dispute Resolution (ADR) package
    d. [X]  Civil Case Cover Sheet *(served in complex cases only)*
    e. [ ]  cross-complaint
    f. [X]  other *(specify documents):*    CIVIL LAWSUIT NOTICE, NOTICE OF POSTING JURY FEES
3.  a.  Party served *(specify name of party as shown on documents served)*:
       HULA NETWORKS, INC, A CALIFORNIA CORPORATION
    b. [X]  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
       AGENT FOR SERVICE-STEPHEN ROBINSON
4.  Address where the party was served:
    2121 Cheryl Way, San Jose, CA 95125
5.  I served the party *(check proper box)*
    a. [X]  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
       receive service of process for the party (1) on *(date)*:  Tue, Jan 29 2019      (2) at *(time)*:  04:42 PM
    b. [ ]  **by substituted service.** On *(date)*:                      at *(time)*:                      I left the documents listed in
       item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

       (1) [ ]  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to
                be served. I informed him or her of the general nature of the papers.
       (2) [ ]  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of
                the party. I informed him or her of the general nature of the papers.
       (3) [ ]  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the
                person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature
                of the papers.
       (4) [ ]  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place
                where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:
                from *(city)*:                                          or [ ]  a declaration of mailing is attached.
       (5) [ ]  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**PROOF OF SERVICE OF SUMMONS**

| PLAINTIFF / PETITIONER:  MARTHA SILVA | CASE NUMBER: |
|---|---|
| DEFENDANT / RESPONDENT:  HULA NETWORKS, INC | 19CV357985 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1)  on *(date):*     (2)  from *(city):*

(3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt.)* (Code Civ. Proc., § 415.30.)

(4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d.  ☐  **by other means** *(specify means of service and authorizing code section):*

☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

a.  ☐  as an individual defendant.

b.  ☐  as the person sued under the fictitious name of *(specify):*

c.  ☐  as occupant.

d.  ☒  On behalf of *(specify):*  HULA NETWORKS, INC,  A CALIFORNIA CORPORATION

under the following Code of Civil Procedure section:

☐  416.10 (corporation)          ☐  415.95 (business organization, form unknown)

☐  416.20 (defunct corporation)      ☐  416.60 (minor)

☐  416.30 (joint stock company/association)   ☐  416.70 (ward or conservatee)

☐  416.40 (association or partnership)    ☐  416.90 (authorized person)

☐  416.50 (public entity)         ☐  415.46 (occupant)

☐  other:

7.  **Person who served papers**

a.  Name:       HECTOR TORRES @ LEGAL PURSUIT INC

b.  Address:     22 W. ST JOHN ST. #B
              SAN JSOE, CA 95113

c.  Telephone number:   408-288-4105

d.  **The fee for service was:**

e.  I am:

(1)  ☐  not a registered California process server.

(2)  ☐  exempt from registration under Business and Professions Code section 22350(b).

(3)  ☒  a registered California process server:

(i)  ☐  owner  ☐  employee  ☒  independent contractor

(ii)  Registration No:  1585

(iii)  County:  SANTA CLARA

8.  ☒  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9.  ☐  I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:  01/02/20

HECTOR TORRES

_____
(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

_____
(SIGNATURE)

**EXHIBIT C**

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 1/17/2020 2:33 PM
Reviewed By: L. Quach-Marcellana
Case #19CV357985
Envelope: 3906948**

1 | Yosef Peretz (SBN 209288)
yperetz@peretzlaw.com
2 | David Garibaldi (SBN 313641)
dgaribaldi@peretzlaw.com
3 | PERETZ & ASSOCIATES
22 Battery Street, Suite 202
4 | San Francisco, CA 94111
Telephone:  415.732.3777
5 | Facsimile:  415.732.3791

6

7 | Attorneys for Plaintiff MARTHA SILVA

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF SANTA CLARA**

9

10 | MARTHA SILVA, an individual

11

12 | Plaintiff,

13 | v.

14 | HULA NETWORKS, INC., a California
corporation
15

16 | Defendants.

Case No. 19CV357985

**FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL**

1. Discrimination Based on Race or National
   Origin in Violation of the California FEHA;
2. Harassment and Hostile Work Environment
   Based on Race or National Origin in
   Violation of the California FEHA;
3. Failure to Pay the Minimum Wage in
   Violation of California Labor Code §
   1182.12;
4. Failure to Pay Overtime Wages in Violation
   of California Labor Code §§ 510, 1194, and
   1198, and California IWC Wage Orders;
5. Failure to Provide Meal and Rest Periods in
   Violation of California Labor Code §§
   226.7, 512, 1198, and California IWC Wage
   Orders;
6. Failure to Pay Timely Wages in Violation
   of California Labor Code § 226;
7. Failure to Reimburse Employee Expenses in
   Violation of California Labor Code § 2082;
8. Unlawful, Unfair, and Fraudulent Business
   Practices in Violation of Bus. & Prof. Code
   §§ 17200 and 17203, *et seq*.;
9. Discrimination Based on Race or National
   Origin in Violation of Title VII of the Civil
   Rights Act of 1964;

10. Harassment Based on Race or National Origin in Violation of Title VII of the Civil Rights Act of 1964;

11. Failure to Pay Minimum Wage in Violation of the Fair Labor Standards Act;

12. Failure to Pay Overtime Wages in Violation of the Fair Labor Standards Act;

13. Failure to Pay Timely Wages in Violation of the Fair Labor Standards Act;

14. Discrimination Based on Race or National Origin in Violation of the New Jersey Law Against Discrimination;

15. Harassment Based on Race or National Origin in Violation of the New Jersey Law Against Discrimination;

16. Failure to Pay Minimum Wage in Violation of the New Jersey Wage and Hour Law;

17. Failure to Pay Overtime Wages in Violation of the New Jersey Wage and Hour Law;

18. Failure to Pay Timely Wages in Violation of the New Jersey Wage and Hour Law;

19. Discrimination Based on Race or National Origin in Violation of Puerto Rico Act 100;

20. Harassment Based on Race or National Origin in Violation of Puerto Rico Act 100;

21. Failure to Pay Minimum Wage in Violation of Puerto Rico Minimum Wage, Vacation and Sick Leave Law;

22. Failure to Pay Overtime Wages in Violation of Puerto Rico Minimum Wage, Vacation and Sick Leave Law;

23. Failure to Pay Timely Wages in Violation of Puerto Rico Minimum Wage, Vacation and Sick Leave Law;

24. Breach of Contract under California, New Jersey and/or Puerto Rico Laws; and

25. Wrongful Termination in Violation of Public Policy in California and/or New Jersey.

//

//

//

Plaintiff MARTHA SILVA ("Silva") complains and alleges as follows:

## I.   INTRODUCTION

1.      This is an action brought by Silva against Defendant HULA NETWORKS, INC. ("Hula") for various employment law violations and torts pertaining to Silva's employment at Hula and her wrongful termination.

2.      Silva was an Account Representative who worked for Hula, a company located and headquartered in Santa Clara County, California.  Silva has worked at Hula from December 1, 2013 until her wrongful termination on January 2, 2020.  Initially, she worked for Hula remotely from her home in Puerto Rico.  In approximately October 2017, Silva moved to New Jersey and continued to work remotely for Hula from New Jersey, and did so until her termination.

3.      In April 2014, Silva suffered a debilitating accident, causing her to seriously fracture her left ankle, and she became bedridden for approximately 7 months.  Rather than accommodate her disability in any way, Hula forced Silva to continue working as though she had not suffered any injury at all, even forcing her to work from the hospital and her bed at home, against the orders of her medical providers.

4.      Despite her devotion to Hula, Silva was repeatedly subjected to mockery and harassing conduct on account of her race and national origin by numerous members of Hula's officers, including but not limited to Scott Hobin, its Chief Executive Officer ("Hobin") and Steve Robinson ("Robinson"), its Chief Operating Officer.  This abuse has created a sever and/or pervasive and hostile work environment for Silva.

5.      Silva was also misclassified as a "1099 contractor", *i.e.* an independent contractor, throughout her time at Hula and thereby denied minimum pay, straight time wages, overtime wages and meal and rest break premiums.  Hula classified her as such for the express purpose of paying her lower compensation, as it nevertheless directed all of her work and required her to work upwards of 12 hours per day for nearly every day of her employment so long as she was physically capable of doing so.

6.      On November 4, 2019, Silva filed the initial Complaint in this action against Hula for claims relating to the conduct above: discrimination, harassment, and wage claims under Federal, California, New Jersey, and Puerto Rico law.  On or about November 11, 2019, Silva caused a copy of the Complaint to be delivered to Hobin.

7.     Thereafter, in retaliation for suing Hula, Hula failed to pay Silva's next commission payment.  Instead, it began attempts to coerce Silva to execute various new writings to unilaterally and illegally alter the terms and conditions of Silva's employment with Hula.  After Silva communicated her refusal to sign these writings or agree to alter the terms of her employment, Hobin informed her that the terms of her employment were being altered unilaterally by Hula and her continued refusal would result in her termination.

8.     After obtaining this news, Silva formally served the initial Complaint on Hula on December 29, 2019.  Three days later, on January 2, 2020, Hula terminated Silva's employment from Hula in retaliation for filing this lawsuit seeking redress.

9.     Silva, therefore, seeks to recover actual damages, restitution, general damages, civil penalties, statutory damages, and punitive damages he suffered as a result of the wrongful conduct she was subjected to, as well as the costs of this lawsuit, including reasonable attorneys' fees.

## II.     PARTIES

10.     Silva is a resident of the State of New Jersey since approximately October 2018.  Prior to that, she was a resident of Puerto Rico at all relevant times.

11.     Hula is a California corporation that operates a computer networking business, headquartered in Sunnyvale, California.  For all relevant times, Hula was and is still an employer within the meaning of the California Fair Employment and Housing Act, California Government Code ("Gov't Code") § 12926, *et seq.* ("FEHA").

12.     Hobin is an individual residing in Santa Clara County, California.  He is the Chief Financial Officer ("CFO") of Hula since its inception, and upon information and belief he has recently been appointed to be Hula's Chief Executive Officer ("CEO").  Hobin has been with Hula since its incorporation in 2002.

13.     Robinson is an individual residing in Santa Clara County, California.  He is the Chief Operating Officer ("COO") of Hula since its inception, and he has been with Hula since its incorporation in 2002.

14.     Defendants Does 1 through 20 are sued herein under fictitious names pursuant to California Code of Civil Procedure ("CCP") § 474.  These defendants are in some way liable for the damages sustained by Silva.  Upon information and belief, Does 1 through 20 acted with and on behalf of Hula in the alleged violations.  Silva does not, at this time, know the true names or

capacities of said unnamed defendants, but prays that the same may be inserted herein when ascertained.

15.     Silva is informed and believes and thereon alleges that each of the Defendants designated as a doe is responsible in some manner for the events and happenings herein, and that Silva's injuries and damages as hereinafter set forth were proximately caused by Defendants. Silva is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants sued herein was the agent and/or employee of each of the remaining Defendants, and each of them, was at all times acting within the purpose and scope of such agency and employment.

## III.   JURISDICTION AND VENUE

16.     Jurisdiction and venue are proper because Silva's claims and causes of action arose in the County of Santa Clara, because records relating to the claims made in this action are located in Santa Clara County, because numerous percipient witnesses and employees of Hula live in Santa Clara County, and because Hula is headquartered in and regularly does business in Santa Clara County.

17.     In response to Defendants' unlawful conduct, Silva filed a Complaint of Discrimination and Retaliation against Hula with the California Department of Fair Employment and Housing ("DFEH") on November 4, 2019.  The DFEH issued a Right-To-Sue Notice under Gov't Code § 12965(b), permitting Silva to file a civil action under FEHA and any federal discrimination statute that same day.  A copy of said Complaint and Right-to-Sue Notice are attached herein as Exhibits A and B, respectively.

18.     After she was wrongfully terminated, Silva filed a Complaint of Discrimination and Retaliation against Defendant with the DFEH on January 17, 2020.  The DFEH issued a Right-To-Sue Notice under Gov't Code § 12965(b), permitting Silva to file a civil action under FEHA and any federal discrimination statute that same day.  A copy of said Complaint and Right-to-Sue Notice are attached herein as Exhibits C and D, respectively.

19.     Pursuant to a Work-Sharing Agreement between the EEOC and DFEH, a charge filed with one agency is deemed filed with the other, and the same applies to a right-to-sue notice provided by either agency, and therefore Silva satisfied any administrative prerequisite to file a complaint under California or federal statutes pertaining to the claims alleged in this action.

//

## IV.     FACTUAL ALLEGATIONS

20.     Silva is a 54 year-old woman of Puerto Rican origin.  While she is fluent in English, she speaks the language with a heavy accent.

21.     On or about December 1, 2013, Silva was hired by Hula as an Account Representative reporting directly to Hobin, tasked with obtaining clients and making sales on Hula's behalf.  Silva's employment was based upon a written agreement that was signed between the parties (the "employment agreement") and it asserted that she was presumably a "1099 contractor at will," and that she would receive a flat salary plus commissions based on her sales, a company cell phone issued at a maximum of $100 per month, $400 towards full medical and dental benefits 90 days after starting, and would be given 5 paid vacation days per year and 5 personal sick days per year commencing after the first 6 months of her work.  A true and correct copy of Silva's employment agreement is attached hereto as Exhibit E.

22.     Although the employment agreement referred to Silva as a "1099 contractor," Silva performed as a *de facto* employee of Hula throughout her time there.  At all relevant times, Hula controlled, and still controls, the tasks that Silva performs for Hula and all business aspects of her job at Hula.

23.     At the time of her hiring, Silva was living in Puerto Rico and was hired by Hula to work remotely in Puerto Rico in order to give Hula a presence there.

24.     Between December 1, 2013 and April 2014, Silva worked approximately 12 hours per day at Hula's direction.  Hula required her to work these hours as it required her to attend meetings by phone or communicate with her supervisors at odd times caused due to the time difference between Puerto Rico and California.  This required Silva to sometimes wake up as early as 4:00 a.m. or to work as late as 10:00 p.m. most days.  During this time, Silva was also not afforded any ten-minute rest breaks by Hula and worked through them almost every single day of her employment.

25.     In or around April 2014, Silva suffered a debilitating accident where she fell down a set of stairs and suffered a serious fracture to her left ankle.  Silva had to undergo surgery to repair the fracture.

26.     As part of her recovery plan, she was prescribed 7 straight months of bed rest in order for her ankle to properly heal and had to stay at the hospital for 9 days before she could be

discharged.  Silva's medical provider specifically ordered that Silva was not allowed to walk or leave her bed for any reason except to take a shower or attend a doctor's appointment.

27.     As a result of this debilitating injury, Silva was physically incapable of doing many of her employment tasks, such as attend meetings or personally interact with local clients.

28.     Nevertheless, rather than afford her any time off or any accommodations for this injury, Hula still required Silva to work from her bed by taking phone calls and working on her computer.  Hula required Silva to attend to a client's emergency just one day after she underwent surgery and was still in the hospital.  Silva worked approximately 6 to 8 hours per day during this time frame, but the only reason she did not work longer was because she was not physically capable of doing so.

29.     Despite her dedication, Hula, particularly through Hobin and Robinson, did not take news of Silva's injury well and effectively deemed her a burden instead of an asset.  As such, Hula began to withdraw any support towards Silva and actively started to undermine her efforts to do her job in an attempt to coerce her to resign from her employment.

30.     Once, while still injured, Silva had no choice but to leave her bed and visit her best client, Evertech, in person in a wheelchair in order to maintain Hula's client-service relationship with that customer.  Despite this, Hula continued to provide Silva with no support on this account and she temporarily lost Evertech as a client, which further damaged her income as she had been switched to a commission-only compensation scheme.

31.     After the 7 months of bed rest, Silva had to undergo physical therapy for approximately 5 additional months before she could get around fully under her own power.  After she fully recovered from her injuries, in or around April 2017, Silva again began to work nearly 12-hour days for Hula on almost every day that she worked.

32.     Once Silva was able to attend weekly telephone meetings with the entire Hula team, Hobin, Robinson, and other members of Hula would mock Silva during the meetings. Hobin and Robinson would routinely put the call on "mute" while Silva was speaking and then proceed to crack jokes at her expense, making fun of Silva's accent and manner of speaking. Hobin, Robinson, and others would make statements such as saying that Silva had "marbles in her mouth," or would laugh and snicker whenever Silva was speaking.  Silva could tell she was being put on "mute" due to the difference in sound coming from the line.  This has occurred almost every Monday since she was able to once again attend the weekly telephone meetings.

33.     In addition to making fun of her voice, Hobin and Robinson began to ostracize Silva from Hula in other ways.  For instance, during these weekly Monday phone meetings, Hobin and Robinson would do things such as ask each and every member of the team to briefly state how their weekend went, *except* Silva.  Hobin and Robinson purposefully ignored Silva on these calls in this manner in an attempt to make her feel alone and isolated.

34.     Then, on or about September 2017, Silva received a phone call from Hobin and Robinson, informing her that they were very unhappy with her performance to date and that she needed to earn $10,000 in commissions by the next month or face severe consequences.  Silva responded that it would be impossible for her to achieve such high sales commissions due to the limited contributions she could make as a result of her ongoing health issues at that time.  Hobin and Robinson were not sympathetic and imposed this unreasonable goal on Silva.

35.     In September 2017, Hurricane Maria devastated the island of Puerto Rico, leaving millions without electricity or running water.  In October 2017, the damage by Hurricane Maria caused Silva to move to the State of New Jersey.

36.     Once Silva was settled in New Jersey, and until her termination, Silva has again worked approximately 12 hours per day at Hula's direction.  Hula required her to work these hours as it required her to attend meetings by phone or communicate with her supervisors at odd times caused due to the time difference between New Jersey and California.  This required Silva to sometimes wake up as early as 4:00 a.m. or to work as late as 10:00 p.m. most days.  Silva also still did not take any ten-minute rest breaks but simply worked through them.

37.     By November 2017, Silva had been unable to meet the commission goal imposed on her by Hobin and Robinson.  As a result, Robinson informed Silva that Hula would be switching her compensation structure from a guaranteed base salary plus commissions to commissions only.  During this call, Robinson told Silva that she was now "on your own."

38.     Hula's decision to switch Silva's pay to commissions only was an unlawful, unilateral, and unenforceable modification to Silva's employment agreement, which provided that any modification to her employment would only be effective if it is in writing and signed by both parties.  Silva never consented to a switch to commission-only pay, but Hula unilaterally imposed commission-only pay upon her anyway.

39.     The regular verbal abuse on Monday morning phone meetings towards Silva continued after she was switched to this compensation scheme.  The abuse became so pervasive

that, on or about June 5, 2018, the then-CEO of Hula, Joseph Commendatore ("Commendatore"), issued to Robinson a written Letter of Discipline in part for his behavior during these weekly phone calls.  Commendatore charged that Robinson had been making fun of Silva's accent on these calls by rolling his eyes and laughing when Silva spoke, along with encouraging other members on the team to laugh along with him.  Commendatore also commended that he had previously warned Robinson of the unacceptability of his behavior.

40.     Further, throughout her employment, Hula has continually delayed in paying Silva the salary or commissions she is owed in a timely fashion.  Silva was scheduled to be paid on the 15th and 30th of every month, just like every other employee of Hula.  However, Silva was never paid timely.  Instead, Silva repeatedly had to ask Robinson for payment of her salary or commissions, which were then delivered to her days or even weeks late on a regular basis for no reason other than to harass her and coerce her to resign.

41.     Additionally, despite the fact that Silva's employment agreement promised her a $400 monthly allowance for full medical and dental benefits 90 days after she started working for Hula, Hula never paid her any allowance for medical or dental benefits at all.  Silva has had to self-fund her medical insurance throughout her time at Hula; she paid for private insurance out-of-pocket until her salary was cut, and was then forced to apply for Medicaid.

42.     Despite the fact that Silva's employment agreement promised her a $100 monthly allowance for a company cell phone, Hula only ever paid Silva this allowance approximately 6 times throughout her employment.  Silva has had to self-fund her cell phone service for the rest of her time at Hula.

43.     Finally, Silva has had to incur numerous other financial expenses solely for the purpose of her employment with Hula, including but not limited to mileage fees, internet service, and maintaining a home office to carry out her job tasks.  Despite requesting reimbursement of expenses for these items from Hula, Hula has refused to reimburse Silva for any such expenses.

44.     On November 4, 2019, Silva filed the initial Complaint in this action against Hula alleging all of the above factual allegations and asserting claims relating to the conduct above: discrimination, harassment, and wage and hour claims under Federal, California, New Jersey, and Puerto Rico law.

45.    Thereafter, on or around November 15, 2019, Hobin caused Hula to not pay Silva's next commission payment.  Instead, Hobin began attempts to coerce Silva to execute various new writings to unilaterally and illegally alter the terms of Silva's employment with Hula.

46.    On November 15, 2019, Hobin asked Silva to sign a W9 form which would misrepresent her employment status as an independent contractor rather than an employee of Hula.  Silva refused to sign this document because it did not reflect her status as an employee.

47.    On December 6, 2019, Hobin asked Silva to sign a new Hula "trade secrets policy" that unlawfully asked Silva to waive away various employment-related rights to Hula.  When Silva refused to sign this document, Hobin singled her out and reprimanded her in an email copied to all Hula employees.

48.    On December 18, 2019, Hobin asked Hula to sign a new employment agreement altogether, ostensibly to comply with new California legislation going into effect on January 1, 2020.  This agreement negatively affected Silva's terms and conditions of employment with Hula, including but not limited to offering her the paltry wage of $13.00 per hour plus commission payments and reducing the benefits she was entitled to under the employment agreement.

49.    Silva communicated her refusal to sign these writings or agree to alter the terms of her employment.  After doing so, Hobin informed Silva that the terms of her employment were being altered *unilaterally* by Hula and her continued refusal to sign her new employment agreement would result in her termination.

50.    After obtaining this news, Silva formally served the initial Complaint on Hula on December 29, 2019.

51.    Three days later, on January 2, 2020, without any additional notice Hula terminated Silva's employment from Hula in retaliation for filing this lawsuit seeking redress.

52.    As a false pretext for the termination, Hula claimed that Silva "refused to agree" to new terms of her employment, which Hula desired to unilaterally impose upon her.  However, the true motivating factor behind the termination was Silva's filing and service of this initial lawsuit, asserting claims for discrimination, harassment, and wage and hour claims against Hula under Federal, California, New Jersey, and Puerto Rico law.

### FIRST CAUSE OF ACTION
### Discrimination Based on Race or National Origin in Violation of FEHA
### (Alleged against all Defendants)

53.    Silva repeats and re-alleges all of the previous allegations herein by reference.

54.     FEHA broadly prohibits discrimination against an employee in compensation or in terms, conditions, or privileges of employment based on that employee's "race…color, [or] national origin."   Gov't Code § 12940(a).

55.     Silva is a member of a protected category under FEHA because of her race (Latino/Hispanic) and her national origin (citizen of Puerto Rico and Puerto Rican ethnic background).

56.     At no point between her joining Hula in 2014 and her accident in 2017 did Hula indicate that Silva's performance showed that she was underqualified for her job as Account Representative.

57.     The consistent and pervasive derogatory comments and abusive conditions that Defendants subjected Silva to, as described above, changed the terms, conditions, and privileges of Silva's employment with Hula.  Silva was prevented from carrying out her role at Hula as Account Representative, as the harassing conduct isolated and ostracized Silva from many of Hula's resources while she was recovering.

58.     Defendants later revoked Silva's base salary and instead paid her on a commission-only basis, again motivated by her ethnicity and origin, which further reduced the terms, conditions, and privileges of Silva's employment with Hula as she was pressed to forego a guaranteed income unless she met unreasonable sales standards that no other employee was asked to fulfill.

59.     Defendants subjected Silva to these consistent and pervasive derogatory comments, harassing conduct, and abusive conditions due to her race and national origin, as many of the derogatory comments focused on Silva's accent during meetings.

60.     Defendants subjected Silva to these conditions in an effort to diminish the terms, conditions, and privileges of Silva's role as Account Representative at Hula.

61.     The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

62.     As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

63.     In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

**SECOND CAUSE OF ACTION**
**Harassment and Hostile Work Environment Based on Race or National Origin**
**in Violation of FEHA**
**(Alleged against all Defendants)**

64.     Silva repeats and re-alleges all of the previous allegations herein by reference.

65.     The FEHA specifically prohibits harassment based on, among other things, "race…color, [or] national origin." Gov. Code § 12940(j)(1).  The FEHA more broadly prohibits harassment where the harassing conduct is sufficiently severe and pervasive to alter the conditions of an individual's employment and creates an abusive work environment.

66.      Silva is a member of a protected category under FEHA because of her race (Latino/Hispanic) and her national origin (citizen of Puerto Rico and Puerto Rican ethnic background).

67.     The consistent and/or pervasive derogatory comments, harassing conduct, and abusive conditions that Defendants subjected Silva to as described above are of the type that create an abusive work environment.

68.     Defendants subjected Silva to these consistent and pervasive derogatory comments, harassing conduct, and abusive conditions due to her race and national origin, as many of the derogatory comments focused on her accent during meetings.

69.     The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

70.     As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

71.     In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

**THIRD CAUSE OF ACTION**
**Failure to Pay the Minimum Wage in Violation of Labor Code § 1182.12**
**(Alleged against Hula)**

72.     Silva repeats and re-alleges all of the previous allegations herein by reference.

73. Any employee in California should be paid a minimum wage of $9.00 per hour for work performed between July 1, 2014 and January 1, 2016 and $10.00 an hour for work performed between January 1, 2016 and December 31, 2016. California Labor Code § 1182.12(a). The minimum wage required to be paid to an employee from January 1, 2017 to January 2, 2020, incrementally increases depending on the amount of employees that an employer has. *Id.*

74. Hula annulled Silva's base salary in November 2017, paying only commission on sales for work thereafter.

75. Without a base salary, the amount Hula paid to employee does not meet the minimum wage requirement.

76. As a result of Hula's denial of a base salary, Silva has suffered significant damages in an amount to be proven at trial.

77. In any action to recover wages because of the payment of a wage less than the minimum wage, an employee shall also be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Labor Code § 1194.2. Accordingly, Silva is entitled to such liquidated damages in an amount to be proven at trial.

78. Any employer who paid or causes to be paid to any employee a wage less than the minimum wage shall also be subject to civil penalties based upon each pay period for which the employee was underpaid and each subsequent violation for the same offense. Labor Code § 1197.1. Accordingly, Silva is entitled to all civil penalties proscribed by that statute as appropriate, in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### Failure to Pay Overtime Wages in
### Violation of Labor Code §§ 510, 1194, and 1198, and IWC Wage Orders
### (Alleged against all Defendants)

79. Silva repeats and re-alleges all of the previous allegations herein by reference.

80. Labor Code § 510(a) provides that any work performed by a non-exempt employee in excess of 8 hours in a day or 40 hours in a week must be compensated at a rate not less than one-and-one half times the regular rate of pay for an employee.

81. Labor Code § 1198 provides that the standard conditions of labor fixed by the wage orders are the standard condition of labor for employees, and that the "employment of any employee…under conditions of labor prohibited by the order is unlawful."

82. Industrial Welfare Commission ("IWC") Wage Order No. 5, § 3(C) and 8 Cal. Code of Regulations 11040 require that overtime wages be paid for work in excess of 8 hours per day and 40 hours per week, or after 8 hours worked on the 7th consecutive day of any work week, at a rate of one and one-half of the employee's regular pay rate.

83. Between approximately December 1, 2013 to the end of her employment on January 2, 2020, Hula has failed to compensate Silva for hours she worked in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week, as required by Labor Code § 510(a), IWC Wage Order No. 5, § 3(C), and 8 Cal Code of Regulations § 11050.

84. Pursuant to Labor Code §§ 510 and 1194(a), Silva requests an award in the amount of unpaid overtime wages owed to him by Hula for work done between December 1, 2013 to the end of her employment on January 2, 2020 in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week in an amount according to proof at trial.

**FIFTH CAUSE OF ACTION**
**Failure to Provide Rest Periods in**
**Violation of Labor Code §§ 226.7, 512, and 1198 and IWC Wage Orders**
**(Alleged against all Defendants)**

85. Silva repeats and re-alleges all of the previous allegations herein by reference.

86. Pursuant to Labor Code § 226.7(a) and IWC Wage Order No. 5, Hula was required to authorize and permit employees, including Silva, to take meal and/or rest breaks based upon the total amount of hours worked, at a rate of 30 minutes meal break and 10 minutes net rest time per 4 hours or major fraction thereof worked, with no deduction from wages.

87. Pursuant to Labor Code § 226.7(b) and IWC Wage Order 5, Hula was required to pay employees, including Silva, one hour of pay at the employee's regular rate of pay for each work day that rest periods were required to be provided but were not provided.

88. Labor Code § 1198 provides that the standard conditions of labor fixed by the wage orders are the standard condition of labor for employees and that the "employment of any employee…under conditions of labor prohibited by the order is unlawful.".

89. Hula failed and refused to authorize and permit Silva to take a 30-minute uninterrupted meal breaks and/or 10-minute rest breaks for every 4 hours, or major fraction thereof, that she worked, in violation of Labor Code § 226.7(a) and IWC Wage Order 5.

90.     Hula further violated Labor Code § 226.7(b) and IWC Wage Order 5 by failing to pay Silva one hour of pay at her regular rate of pay for each workday that he was not provided a 30-minute meal break and/or 10-minute rest breaks.

91.     Silva requests an award in the amount of compensation of one hour at the regular rate of pay for each missed 30-minute meal break and/or 10-minute rest break denied in violation of § 226.7(a) and IWC Wage Order 5 in an amount according to proof at trial.

**SIXTH CAUSE OF ACTION**
**Failure to Pay Timely Wages in Violation of the Labor Code**
**(Alleged against Hula)**

92.     Silva repeats and re-alleges all of the previous allegations herein by reference.

93.     Wages are due to the employee twice a month — first between the first and tenth day of the month, then between the sixteenth and twenty-sixth day. California Labor Code § 204(a).

94.     Even if the commission would meet the minimum wage for the work performed following the removal of Silva's base salary in November 2017, Defendants have not paid this commission regularly and on time since.

95.     Consequently, on multiple occasions Defendants have failed to pay for work done by the required date.

96.     As a result of Defendants' inability to pay commission on time, Silva has suffered significant damages in an amount to be proven at trial.

97.     Further, any employer who fails to pay the wages of an employee as provided under Labor Code § 204(a) is subject to civil penalties based on the number and nature of each violation.  Labor Code § 210.  Silva asserts that she is entitled to all such penalties in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**Failure to Reimburse Employee Expenses in Violation of the Labor Code**
**(Alleged against all Defendants)**

98.     Silva repeats and re-alleges all of the previous allegations herein by reference.

99.     California Labor Code § 2802 proscribed: "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer."

100.    Throughout her employment with Hula, Silva incurred multiple necessary expenditures in direct consequence of the discharge of her or her duties, including but not limited to mileage expenses to meet with clients and carry out job duties, the costs of a cell phone and cellular phone services, the costs of internet service, the costs of maintaining a home office, and the costs of obtaining medical insurance.

101.    Hula initially promised to provide Silva with allowances to pay for some or all of the above items, but Hula never made any payment to Silva to make these necessary expenditures.

102.    As a result of Defendants' inability or refusal to indemnify Silva for these necessary expenditures, Silva has suffered significant damages in an amount to be proven at trial and is entitled to payment compensating her for these necessary expenditures or losses and all other relief by law, including attorneys' fees and civil penalties for pursuing this action.

**EIGHTH CAUSE OF ACTION**
**Unlawful, Unfair, and/or Fraudulent Business Practices**
**in Violation of the Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.***
**(Alleged against all Defendants)**

103.    Silva repeats and re-alleges all of the previous allegations herein by reference.

104.    The California Business and Professions Code ("Bus. & Prof. Code") § 17200, *et seq.* (the "Unfair Business Practices Act") prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice.

105.    Bus. & Prof. Code § 17202 provides that "[N]otwithstanding Section 2289 of the Civil Code, specific or preventative relief may be granted to enforce a penalty, forfeiture, or penal law in case of unfair competition.

106.    Bus. & Prof. Code § 1703 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

107.    Bus. & Prof. Code § 17204 allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to prosecute a civil action for violation of this code.

108.    Bus. & Prof. Code § 17204 allows "any person acting for the interest of itself, its members or the general public" to prosecute a civil action for violation of the Unfair Business Practices Act.

109.    Labor Code § 90.5(a) states that it the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempts to gain competitive advantage at the expense of their workers by failing to comply with the minimum standards law."

110.    Beginning at an exact date unknown to Plaintiff, but at least since the date four years prior to filing this suit, Defendants had committed acts of unfair competition as defined by the Bus. & Prof. Code, by engaging in the unlawful, unfair, and fraudulent acts and practices described in this Complaint, including but not limited to:

    a.    Breach of the employment agreement by not paying Silva her wages and/or any benefits and fringe benefits provided to her under that agreement;

    b.    Violations of Labor Code § 1182.12 pertaining to compensating employees for at least the minimum wage;

    c.    Violations of Labor Code §§ 510, 1194, and 1198, and IWC Wage Orders pertaining to overtime compensation;

    d.    Violations of Labor Code §§ 226.7, 512, and 1198, and IWC Wage Orders pertaining to meal and rest periods;

    e.    Violations of Labor Code § 226, pertaining to itemized statements of wages; and

    f.    Violation of Labor Code § 2082, pertaining to the obligation to reimburse employee expenses.

111.    The violation of the above laws and regulations, as well as of fundamental California public policies protecting workers, serve as unlawful predicate acts and practices for purposes of Bus. & Prof. Code §§ 17200 and 17203, *et seq*.

112.    The acts and practices described above have allowed Defendant to gain an unfair competitive advantage over law-abiding employers and competitors.

113.    Accordingly, the acts and practices described above constitute unfair, unlawful and fraudulent business practices within the meaning of Bus. & Prof. Code §§ 17200 and 17203, *et seq.*

114.    As a direct and proximate result of the acts described herein, Plaintiff has been denied compensation in an amount to be proven at trial.

115.    Plaintiff is entitled to restitution pursuant to Bus. & Prof. Code § 17203 for all wages and other compensation unlawfully withheld from Plaintiff during the four-year period prior to the filing of the complaint.

**NINTH CAUSE OF ACTION**
**Discrimination Based on Race or National Origin**
**in Violation of Title VII of the Civil Rights Act of 1964**
**(Alleged against all Defendants)**

116.    Silva repeats and re-alleges all of the previous allegations herein by reference.

117.    Title VII of the Civil Rights Act of 1964 ("Title VII") broadly prohibits discrimination against an employee in compensation or in "terms, conditions, or privileges of employment" based on that employee's "race...color, [or] national origin."  42 U.S.C. § 2000e-2(a)(1).

118.    Silva is a member of a protected category under Title VII because of her race (Latino/Hispanic) and her national origin (citizen of Puerto Rico and Puerto Rican ethnic background).

119.    At no point between her joining Hula in 2014 and her accident in 2017 did Hula indicate that Silva's performance showed that she was underqualified for her job as Account Representative.

120.    The consistent and pervasive derogatory comments and abusive conditions that Defendants subjected Silva to, as described above, changed the terms, conditions, and privileges of Silva's employment with Hula.  Silva was prevented from carrying out her role at Hula as Account Representative, as the harassing conduct isolated and ostracized Silva from many of Hula's resources while she was recovering.

121.    Defendants later revoked Silva's base salary and instead paid her on a commission-only basis, again motivated by her ethnicity and origin, which further reduced the terms, conditions, and privileges of Silva's employment with Hula as she was pressed to forego a guaranteed income unless she met unreasonable sales standards that no other employee was asked to fulfill.

122.    Defendants subjected Silva to these consistent and pervasive derogatory comments, harassing conduct, and abusive conditions due to her race and national origin, as many of the derogatory comments focused on Silva's accent during meetings.

123.    Defendants subjected Silva to these conditions in an effort to diminish the terms, conditions, and privileges of Silva's role as Account Representative at Hula.

124.    The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

125.    As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

126.    In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

**TENTH CAUSE OF ACTION**
**Harassment Based on Race or National Origin**
**in Violation of Title VII of the Civil Rights Act of 1964**
**(Alleged against all Defendants)**

127.    Silva repeats and re-alleges all of the previous allegations herein by reference.

128.    Title VII broadly prohibits discrimination against an employee in compensation or in "terms, conditions, or privileges of employment" based on that employee's "race…color, [or] national origin."  42 U.S.C. § 2000e-2(a)(1).

129.    42 U.S.C. § 1981 prohibits racial discrimination, which includes hostile work environment and harassment claims.  *Manatt v. Bank of America, N.A.* (9th Cir. 2003) 339 F.3d 792, 798.  Federal courts have long recognized that a work environment heavily charged with racial or racial discrimination constitutes harassment that violated Title VII.  *See Meritor Sav. Bank, FSB v. Vinson* (1986) 477 U.S. 57, 66.  An employer has a duty to prevent and remedy instances of racial and national origin harassment, and one who fails to remedy such problems despite having actual or constructive knowledge of them may be liable for harassment even if a formal policy against harassment exists.  *DeGrace v. Rumsfeld* (1st Cir. 1980) 614 F.2d 796, 803.

130.    Silva is a member of a protected category under Title VII because of her race (Latino/Hispanic) and her national origin (citizen of Puerto Rico and Puerto Rican ethnic background).

131.    At no point between her joining Hula in 2014 and her accident in 2017 did Hula indicate that Silva's performance showed that she was underqualified for her job as Account Representative.

132.    The consistent and/or pervasive derogatory comments and abusive conditions that Defendants subjected Silva to, as described above, were clearly based on her race, ethnicity, and national origin, and were sufficiently severe or pervasive enough to alter the conditions of her employment.  Silva was prevented from carrying out her role at Hula as Account Representative, as the harassing conduct isolated and ostracized Silva from many of Hula's resources while she was recovering.

133.    Defendants later revoked Silva's base salary and instead paid her on a commission-only basis, again motivated by her ethnicity and origin, which further reduced the terms, conditions, and privileges of Silva's employment with Hula as she was pressed to forego a guaranteed income unless she met unreasonable sales standards that no other employee was asked to fulfill.

134.    Defendants subjected Silva to these consistent and pervasive derogatory comments, harassing conduct, and abusive conditions due to her race and national origin, as many of the derogatory comments focused on Silva's accent during meetings.

135.    Defendants subjected Silva to these conditions in an effort to diminish the terms, conditions, and privileges of Silva's role as Account Representative at Hula.

136.    The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

137.    Defendants' conduct, as described above, represents a concerted pattern of harassment of a repeated, routine or generalized nature and created an unreasonably abusive or offensive work environment that adversely affected Silva's ability to do her job.  Ironically, Defendants then used Silva's lack of ability to do her job properly as a pretext for reducing her wages.

138.    As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

139.    In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

//

//

**ELEVENTH CAUSE OF ACTION**
**Failure to Pay Minimum Wage in Violation of the Fair Labor Standards Act**
**(Alleged against Hula)**

140.     Silva repeats and re-alleges all of the previous allegations herein by reference.

141.     Under the Fair Labor Standards Act, since May 25, 2009, employees must be paid a minimum of $7.25 an hour. 29 U.S.C. § 206(a)(1)(C).

142.     Defendants annulled Silva's base salary in November 2017, paying only commission on sales for work thereafter.

143.     Without a base salary, Defendants cannot guarantee that the amount paid to Silva meets the minimum wage requirement.

144.     Commissions can count towards fulfilling the minimum wage requirement only if it means that the employee "actually received the minimum wage for each hour worked within each separate pay period." *Olson v. Superior Pontiac-GMC, Inc*., 765 F.2d 1570, 1579 (11th Cir. 1985).

145.     Because Defendants have delayed payment of commission owed to Silva, even if that commission would be higher than the minimum wage for the hours worked, Silva did not "actually" receive any payments that could contribute to the wage required by the Fair Labor Standards Act.

146.     As a result of Defendants' denial of base salary and inability to pay commission on time, Silva has suffered significant damages in an amount to be proven at trial.

147.     Further, any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employee in the amount of their unpaid minimum wage or overtime compensation, and in an additional equal amount as liquidated damages.  29 U.S.C. § 216(b).  Accordingly, Silva is entitled to such liquidated damages in an amount according to proof.

**TWELFTH CAUSE OF ACTION**
**Failure to Pay Overtime Wages in Violation of the Fair Labor Standards Act**
**(Alleged against all Defendants)**

148.     Silva repeats and re-alleges all of the previous allegations herein by reference.

149.     29 U.S.C. § 207 provides that any work performed by a non-exempt employee in excess of 8 hours in a day or 40 hours in a week must be compensated at a rate not less than one-and-one half times the regular rate of pay for an employee.

150.     Between approximately December 1, 2013 to January 2, 2020, Hula failed to compensate Silva for hours he worked in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week, as required by to 29 U.S.C. § 207 and the Fair Labor Standards Act, 29 U.S.C. § 203, et seq.

151.     Pursuant to 29 U.S.C. § 207 and the Fair Labor Standards Act, 29 U.S.C. § 203, *et seq.*, Silva requests an award in the amount of unpaid overtime wages owed to her by Hula for work done between December 1, 2013 to the end of her employment on January 2, 2020 in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week in an amount according to proof at trial.

152.     Further, any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employee in the amount of their unpaid minimum wage or overtime compensation, and in an additional equal amount as liquidated damages.  29 U.S.C. § 216(b).  Accordingly, Silva is entitled to such liquidated damages in an amount according to proof.

### THIRTEENTH CAUSE OF ACTION
### Failure to Pay Wages on Time in Violation of the Fair Labor Standards Act
### (Alleged against Hula)

153.     Silva repeats and re-alleges all of the previous allegations herein by reference.

154.     Under the Fair Labor Standards Act, a valid salary under the Act must be "regularly and consistently paid," or, in other words, paid on time.  *See Martin v. U.S.*, 1:13-cv-00834-PEC (Fed. Cl. July 13, 2014).

155.     Even if the commissions paid by Hula to Silva would meet the required minimum wage for the work performed following the removal of Silva's base salary in November 2017, Defendants have not paid this commission "regularly and consistently," or on time, since.

156.     Consequently, on multiple occasions Defendants have failed to pay for work done by the required date.

157.     As a result of Defendants' inability to pay commissions on time, Silva has suffered significant damages in an amount to be proven at trial.

158.     Further, any employer who violates the Fair Labor Standards Act in this manner shall be liable to the employee in the amount of their unpaid compensation, and in an additional equal amount as liquidated damages.  29 U.S.C. § 216(b); *See Martin v. U.S.*, 1:13-cv-00834-PEC (Fed. Cl. July 13, 2014).  Accordingly, Silva is entitled to such liquidated damages in an amount according to proof.

1
2

**FOURTEENTH CAUSE OF ACTION**
**Discrimination Based on Race or National Origin**
**in Violation of the New Jersey Law Against Discrimination**
**(Alleged against all Defendants)**

3      159.   Silva repeats and re-alleges all of the previous allegations herein by reference.

4      160.   New Jersey law applies to any causes of action that arose after Silva moved to and

5   began working out of New Jersey in October 2018.

6      161.   The New Jersey Law Against Discrimination broadly prohibits discrimination

7   against an employee in compensation or in terms, conditions, or privileges of employment based

8   on that employee's "race…color, [or] national origin[.]" N.J. Stat. § 10:5-12(a).

9      162.   Silva is a member of a protected category under the New Jersey Law Against

10  Discrimination because of her race (Latino/Hispanic) and her national origin (citizen of Puerto

    Rico and Puerto Rican ethnic background).

11
    163.   At no point between her joining Hula in 2014 and her accident in 2017 did Hula
12
    indicate that Silva's performance showed that she was underqualified for her job as Account
13
    Representative.

14     164.   The consistent and pervasive derogatory comments and abusive conditions that

15  Defendants subjected Silva to, as described above, were clearly based on her race, ethnicity, and

16  national origin, and were sufficiently severe or pervasive enough to alter the conditions of her

17  employment.  Silva was prevented from carrying out her role at Hula as Account Representative,

18  as the harassing conduct isolated and ostracized Silva from many of Hula's resources while she

    was recovering.
19
    165.   Defendants later revoked Silva's base salary and instead paid her on a
20
    commission-only basis, again motivated by her ethnicity and origin, which further reduced the
21
    terms, conditions, and privileges of Silva's employment with Hula as she was pressed to forego
22
    a guaranteed income unless she met unreasonable sales standards that no other employee was
23
    asked to fulfill.

24     166.   Defendants subjected Silva to these consistent and pervasive derogatory

25  comments, harassing conduct, and abusive conditions due to her race and national origin, as many

26  of the derogatory comments focused on Silva's accent during meetings.

27     167.   Defendants subjected Silva to these conditions in an effort to diminish the terms,

28  conditions, and privileges of Silva's role as Account Representative at Hula.

168.    The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

169.    As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

170.    In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### FIFTEENTH CAUSE OF ACTION
### Harassment Based on Race or National Origin
### in Violation of the New Jersey Law Against Discrimination
### (Alleged against Hula)

171.    Silva repeats and re-alleges all of the previous allegations herein by reference.

172.    New Jersey law applies to any causes of action that arose after Silva moved to and began working out of New Jersey in October 2018.

173.    The New Jersey Law Against Discrimination broadly prohibits discrimination against an employee in compensation or in terms, conditions, or privileges of employment based on that employee's "race…color, [or] national origin[.]" N.J. Stat. § 10:5-12(a).  This prohibition includes and encompasses a prohibition against workplace harassment or the maintenance of a hostile work environment on the basis of an employee's race, color, or national origin.  *See Smith v. Exxon Mobil Corp.* (N.J. 2005) 374 F.Supp.2d 406.

174.    At no point between her joining Hula in 2014 and her accident in 2017 did Hula indicate that Silva's performance showed that she was underqualified for her job as Account Representative.

175.    The consistent and/or pervasive derogatory comments and abusive conditions that Defendants subjected Silva to, as described above, were clearly based on her race, ethnicity, and national origin, and were sufficiently severe or pervasive enough to alter the conditions of her employment.  Silva was prevented from carrying out her role at Hula as Account Representative, as the harassing conduct isolated and ostracized Silva from many of Hula's resources while she was recovering.

176.    Defendants later revoked Silva's base salary and instead paid her on a commission-only basis, again motivated by her ethnicity and origin, which further reduced the

terms, conditions, and privileges of Silva's employment with Hula as she was pressed to forego a guaranteed income unless she met unreasonable sales standards that no other employee was asked to fulfill.

177.    Defendants subjected Silva to these consistent and pervasive derogatory comments, harassing conduct, and abusive conditions due to her race and national origin, as many of the derogatory comments focused on Silva's accent during meetings.

178.    Defendants subjected Silva to these conditions in an effort to diminish the terms, conditions, and privileges of Silva's role as Account Representative at Hula.

179.    The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

180.    Defendants' conduct, as described above, represents a concerted pattern of harassment of a repeated, routine or generalized nature and created an unreasonably abusive or offensive work environment that adversely affected Silva's ability to do her job.   Ironically, Defendants then used Silva's lack of ability to do her job properly as a pretext for reducing her wages.

181.    As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

182.    In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### SIXTEENTH CAUSE OF ACTION
### Failure to Pay Minimum Wage in Violation of the New Jersey Wage and Hour Law
### (Alleged against Hula)

183.    Silva repeats and re-alleges all of the previous allegations herein by reference.

184.    New Jersey law applies to any causes of action that arose after Silva moved to and began working out of New Jersey in October 2018.

185.    The New Jersey Wage and Hour Law mandates a minimum wage of $8.85 per hour. N.J. Stat. § 34:11-56a4(a).

186.    Defendants annulled Silva's base salary in November 2017, paying only commission on sales for work thereafter.

187.    Without a base salary, the amount paid to employee does not meet the minimum wage requirement.

188.    As a result of Defendants' denial of base salary, Silva has suffered significant damages in an amount to be proven at trial.

189.    Further, N.S. Stat § 34:11-56a25 provides for civil penalties in the event an employer fails to pay less than the fair minimum wage of not more than 200 percent of the amount unpaid as liquidated damages.  Accordingly, Silva is entitled to an award of liquidated damages under this statute in an amount according to proof.

### SEVENTEENTH CAUSE OF ACTION
**Failure to Pay Overtime Wages in Violation of the New Jersey Wage and Hour Law**
**(Alleged against all Defendants)**

190.    Silva repeats and re-alleges all of the previous allegations herein by reference.

191.    The New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, *et seq.*, provides that that any work performed by a non-exempt employee in excess of 40 hours in a week must be compensated at a rate not less than one-and-one half times the regular hourly rate of pay for an employee.  N.J.S.A. 34:11-56a4.

192.    Between approximately December 1, 2013 and the end of her employment with the company, Hula has failed to compensate Silva for hours he worked in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week, as required by the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, et seq.

193.    Pursuant to the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, et seq., Silva requests an award in the amount of unpaid overtime wages owed to her by Hula for work done between December 1, 2013 to the end of her employment on January 2, 2020 in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week in an amount according to proof at trial.

### EIGHTEENTH CAUSE OF ACTION
**Failure to Pay Wages on Time in Violation of the New Jersey Wage and Hour Law**
**(Alleged against Hula)**

194.    Silva repeats and re-alleges all of the previous allegations herein by reference.

195.    New Jersey law applies to any causes of action that arose after Silva moved to and began working out of New Jersey in October 2018.

196.    The New Jersey Wage and Hour Law requires wages to be paid twice a month on days predetermined in the employer. N.J. Stat. § 34:11-56a4.

197.    Even if the commission would meet the minimum wage for the work performed following the removal of Silva's base salary in November 2017, Defendants have not paid this commission regularly and on time since.

198.    Consequently, on multiple occasions Defendants have failed to pay for work done by the required date.

199.    As a result of Defendants' inability to pay commission on time, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

200.    In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

201.    Further, N.S. Stat § 34:11-56a25 provides for civil penalties in the event an employer fails to pay less than the fair minimum wage of not more than 200 percent of the amount unpaid as liquidated damages.  Accordingly, Silva is entitled to an award of liquidated damages under this statute in an amount according to proof.

### NINTEENTH CAUSE OF ACTION
**Discrimination Based on Race or National Origin in Violation of Puerto Rico Act No. 100**
**(Alleged against all Defendants)**

202.    Silva repeats and re-alleges all of the previous allegations herein by reference.

203.    Puerto Rico law applies to any causes of action that arose when Silva worked out of Puerto Rico, prior to Silva moving to New Jersey in October 2018.

204.    Puerto Rico Act No. 100 broadly prohibits discrimination against an employee in compensation or in terms, conditions, or privileges of employment based on that employee's "race, color…[or] national origin[.]" 29 L.P.R.A. § 146.

205.    Silva is a member of a protected category under Puerto Rico Act 100 because of her race (Latino/Hispanic) and her national origin (citizen of Puerto Rico and Puerto Rican ethnic background).

206.    At no point between her joining Hula in 2014 and her accident in 2017 did Hula indicate that Silva's performance showed that she was underqualified for her job as Account Representative.

207.    The consistent and pervasive derogatory comments and abusive conditions that Defendants subjected Silva to, as described above, changed the terms, conditions, and privileges of Silva's employment with Hula.  Silva was prevented from carrying out her role at Hula as Account Representative, as the harassing conduct isolated and ostracized Silva from many of Hula's resources while she was recovering.

208.    Defendants later revoked Silva's base salary and instead paid her on a commission-only basis, again motivated by her ethnicity and origin, which further reduced the terms, conditions, and privileges of Silva's employment with Hula as she was pressed to forego a guaranteed income unless she met unreasonable sales standards that no other employee was asked to fulfill.

209.    Defendants subjected Silva to these consistent and pervasive derogatory comments, harassing conduct, and abusive conditions due to her race and national origin, as many of the derogatory comments focused on Silva's accent during meetings.

210.    Defendants subjected Silva to these conditions in an effort to diminish the terms, conditions, and privileges of Silva's role as Account Representative at Hula.

211.    The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

212.    As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

213.    In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### TWENTIETH CAUSE OF ACTION
### Harassment Based on Race or National Origin in Violation of Puerto Rico Act No. 100
### (Alleged against Hula)

214.    Silva repeats and re-alleges all of the previous allegations herein by reference.

215.    Puerto Rico law applies to any causes of action that arose when Silva worked out of Puerto Rico, prior to Silva moving to New Jersey in October 2018.

216.    Puerto Rico Act No. 100 broadly prohibits discrimination against an employee in compensation or in terms, conditions, or privileges of employment based on that employee's "race, color…[or] national origin[.]" 29 L.P.R.A. § 146.   This prohibition includes and

encompasses a prohibition against workplace harassment or the maintenance of a hostile work environment on the basis of an employee's race, color, or national origin

217.    Silva is a member of a protected category under Puerto Rico Act 100 because of her race (Latino/Hispanic) and her national origin (citizen of Puerto Rico and Puerto Rican ethnic background).

218.    At no point between her joining Hula in 2014 and her accident in 2017 did Hula indicate that Silva's performance showed that she was underqualified for her job as Account Representative.

219.    The consistent and/or pervasive derogatory comments and abusive conditions that Defendants subjected Silva to, as described above, were clearly based on her race, ethnicity, and national origin, and were sufficiently severe or pervasive enough to alter the conditions of her employment.  Silva was prevented from carrying out her role at Hula as Account Representative, as the harassing conduct isolated and ostracized Silva from many of Hula's resources while she was recovering.

220.    Defendants later revoked Silva's base salary and instead paid her on a commission-only basis, again motivated by her ethnicity and origin, which further reduced the terms, conditions, and privileges of Silva's employment with Hula as she was pressed to forego a guaranteed income unless she met unreasonable sales standards that no other employee was asked to fulfill.

221.    Defendants subjected Silva to these consistent and pervasive derogatory comments, harassing conduct, and abusive conditions due to her race and national origin, as many of the derogatory comments focused on Silva's accent during meetings.

222.    Defendants subjected Silva to these conditions in an effort to diminish the terms, conditions, and privileges of Silva's role as Account Representative at Hula.

223.    The abusive conduct Silva was subjected to increased and continued despite then-CEO Commendatore's notifying Defendants that the abusive conduct was unacceptable.

224.    Defendants' conduct, as described above, represents a concerted pattern of harassment of a repeated, routine or generalized nature and created an unreasonably abusive or offensive work environment that adversely affected Silva's ability to do her job.  Ironically, Defendants then used Silva's lack of ability to do her job properly as a pretext for reducing her wages.

225.   As a result of Defendants' harassing conduct, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

226.   In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### TWENTY-FIRST CAUSE OF ACTION
**Failure to Pay Minimum Wage in Violation of Puerto Rico Minimum Wage,
Vacation and Sick Leave Law
(Alleged against Hula)**

227.   Silva repeats and re-alleges all of the previous allegations herein by reference.

228.   Puerto Rico law applies to any causes of action that arose when Silva worked out of Puerto Rico, prior to Silva moving to New Jersey in October 2018.

229.   By the Puerto Rico Minimum Wage, Vacation and Sick Leave Law, employees are entitled to the same minimum wage as required under federal law. 29 L.P.R.A. § 250.

230.   Defendants annulled Silva's base salary in November 2017, paying only commission on sales for work thereafter.

231.   Without a base salary, the amount paid to employee does not meet the minimum wage requirement.

232.   As a result of Defendants' denial of base salary, Silva has suffered significant damages in an amount to be proven at trial.

### TWENTY-SECOND CAUSE OF ACTION
**Failure to Provide Overtime Wages in Violation of Puerto Rico Act No. 379
(Alleged against Hula)**

233.   Silva repeats and re-alleges all of the previous allegations herein by reference.

234.   Puerto Rico law applies to any causes of action that arose when Silva worked out of Puerto Rico, prior to Silva moving to New Jersey in October 2018.

235.   Puerto Rico Act No. 271, 29 L.P.R.A. § 271, et seq. provides that that any work performed by a non-exempt employee in excess of 40 hours in a week must be compensated at a rate not less than one-and-one half times the regular hourly rate of pay for an employee.  29 L.P.R.A. § 274.

236.    Between approximately December 1, 2013 to January 2, 2020, Hula has failed to compensate Silva for hours he worked in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week, as required by Puerto Rico Act No. 271.

237.    Pursuant to Puerto Rico Act No. 271, 29 L.P.R.A. § 271, *et seq.*, Silva requests an award in the amount of unpaid overtime wages owed to her by Hula for work done between December 1, 2013 the end of her employment on January 2, 2020 in excess of 8 hours per day, 40 hours per week, or after 8 hours on the 7th consecutive day of any work week in an amount according to proof at trial.

238.    Further, 29 L.P.R.A. § 271 provides for civil penalties in the event an employer fails to comply with the law regarding the payment of regular and overtime wages.  Accordingly, Silva is entitled to an award of liquidated damages under this statute in an amount according to proof.

**TWENTY-THIRD CAUSE OF ACTION**
**Failure to Pay Timely Wages in Violation of Puerto Rico Minimum Wage,**
**Vacation and Sick Leave Law**
**(Alleged against Hula)**

239.    Silva repeats and re-alleges all of the previous allegations herein by reference.

240.    Puerto Rico law applies to any causes of action that arose when Silva worked out of Puerto Rico, prior to Silva moving to New Jersey in October 2018.

241.    The Puerto Rico Minimum Wage, Vacation and Sick Leave Law requires wages to be paid at no more than 15-day intervals. 29 L.P.R.A. § 173.

242.    Even if the commission would meet the minimum wage for the work performed following the removal of Silva's base salary in November 2017, Defendants have not paid this commission regularly and on time since.

243.    Consequently, on multiple occasions Defendants have failed to pay for work done by the required date.

244.    As a result of Defendants' inability to pay commission on time, Silva has suffered significant damages in an amount to be proven at trial, and has also suffered severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

245.     In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

**TWENTY-FOURTH CAUSE OF ACTION**
**Breach of Contract under California, New Jersey, and/or Puerto Rico Laws**
**(Alleged against Hula)**

246.     Silva repeats and re-alleges all of the previous allegations herein by reference.

247.     Silva and Defendant entered into a written agreement for her services to Hula, the employment agreement.  [Exhibit E.]  The employment agreement is a valid, legally binding contract between Silva and Defendant.

248.     Silva has performed all of her obligations under the employment agreement.

249.     Defendant has failed to perform all of its obligations under the employment agreement.  The employment agreement asserted that Silva was a "1099 contractor at will," and that she would receive a flat salary plus commissions based on her sales, a company cell phone issued at a maximum of $100 per month, $400 towards full medical and dental benefits 90 days after starting, and would be given 5 paid vacation days per year and 5 personal sick days per year commencing after the first 6 months of her employment.

250.     However, Defendant required Silva to perform as a *de facto* employee of Hula throughout her time there.  At all relevant times, Hula controlled, and still controls, the tasks that Silva performs for Hula and all business aspects of her job at Hula.  This constitutes a breach of the employment agreement.

251.     Further, whether Silva was a Hula employee or an independent contractor, Defendants breached the employment agreement when it decided to Silva's pay to commissions only.  This was a unlawful, unilateral, and unenforceable modification to Silva's employment agreement, which provided that any modification to the agreement would only be effective if it is in writing and signed by both parties.  Silva never consented to a switch to commission-only pay, and no writing was ever executed by both parties regarding the switch.  Instead, Hula unilaterally imposed commission-only pay upon her unilaterally and without Silva's authorization or consent.

252.     Further, Silva's employment agreement promised her a $400 monthly allowance for full medical and dental benefits 90 days after she started working for Hula.  However, Hula never paid her any allowance for medical or dental benefits at all.  This constitutes a breach of the employment agreement.

253.     Further, Silva's employment agreement promised her a $100 monthly allowance for a company cell phone.  Hula only ever paid Silva this allowance approximately 6 times throughout her employment.  This constitutes a breach of the employment agreement.

254.     Defendants' actions, as described above, directly and proximately have caused and continue to cause Plaintiff to suffer damages in an amount to be proven at trial.

255.     The employment agreement contains no choice of law provision, but that is superfluous as the employment agreement is valid and enforceable under California, New Jersey, and/or Puerto Rico law, and Defendants' conduct constitutes a breach of contract under all such laws.

## TWENTY-FOURTH CAUSE OF ACTION
### Wrongful Termination in Violation of Public Policy in California and/or New Jersey
### (Alleged against Hula)

256.     Silva repeats and re-alleges all of the previous allegations herein by reference.

257.     An employer commits tortious termination in violation of public policy when there is an applicable public policy protecting an employee with a certain status and the employer terminates the employee because of his protected status.  A duty is implied by law on the part of the employer to conduct its affairs in compliance with public policy, expressed judicially or by statute.

258.     The public policies expressed in the FEHA, the California Labor Code, Title VII of the Civil Rights Act of 1964, the Fair Labor Standards Act, the New Jersey Law Against Discrimination, and the New Jersey Wage and Hour Law, all protect Silva from discrimination and retaliation based upon her race or national origin, provide certain wage protections she is entitled to, and protect Silva from retaliation due to the exercise of her rights under said statutes.

259.     On or about November 14, 2019, Silva exercised her rights under said statutes by obtaining a right to sue letter from the DFEH and filing this initial lawsuit in this case against Hula.

260.     On or about December 29, 2019, Silva served Hula with the initial complaint in this action.  Three days later, on or about January 2, 2020, Hula terminated Silva's employment.  Hula's termination of Silva's employment was direct retaliation for the exercise of her rights under the above statutes, and thus violated the public policies expressed by those statutes.

261.     Hula's actions, as described above, directly and proximately have caused and continue to cause Silva to suffer losses of income and work opportunities and have caused her to

suffer severe emotional distress, anguish, pain and suffering, ridicule, humiliation, indignity, and personal embarrassment.

262.    In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Silva's rights and Silva is therefore entitled to punitive damages in an amount according to proof at the time of trial.

## JURY DEMAND

263.    Silva hereby demands a trial by jury in this action.

## PRAYER FOR RELIEF

Wherefore, Silva prays for the following relief:

1.     Actual damages and/or restitution;

2.     General damages;

3.     Punitive damages;

4.     Statutory damages and penalties;

5.     Reasonable attorneys' fees as permitted by law;

6.     Costs of the suit incurred herein as permitted by law; and

7.     All other further relief as this Court deems just and proper.

Dated: January 17, 2020                    PERETZ & ASSOCIATES

                                        By:  _____
                                             Yosef Peretz
                                             David Garibaldi
                                             Attorneys for Plaintiff
                                             MARTHA SILVA

# EXHIBIT A

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

November 4, 2019

David Garibaldi
22 Battery Street, Suite 200
San Francisco, California 94111

RE:    **Notice to Complainant's Attorney**
       DFEH Matter Number: 201911-08157104
       Right to Sue: Silva / Hula Networks, Inc.

Dear David Garibaldi:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

November 4, 2019

RE:     **Notice of Filing of Discrimination Complaint**
        DFEH Matter Number: 201911-08157104
        Right to Sue: Silva / Hula Networks, Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Martha Silva                                    DFEH No. 201911-08157104

Complainant,

vs.

Hula Networks, Inc.
929 Berryessa Rd Suite 10
San Jose, California 95133

Respondents

_____

1. Respondent **Hula Networks, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Martha Silva**, resides in the City of **Fresno** State of **California.**

3. Complainant alleges that on or about **November 4, 2019**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's race, national origin (includes language restrictions), color.

**Complainant was discriminated against** because of complainant's race, national origin (includes language restrictions), color and as a result of the discrimination was reprimanded, denied equal pay, demoted, denied any employment benefit or privilege.

**Additional Complaint Details:** Complainant was discriminated against, harassed, and put in a hostile work environment at Hula Networks, Inc. because of her race, color, and national origin. her voice and accent were mocked on various company conference calls by Hula Networks, Inc.'s officers and directors, and employees. Eventually, her employment agreement and pay structure was changed without her required consent solely on the basis of her race, color, and national origin. Hula Networks, Inc. also failed to pay her the minimum wage, the proper overtime wage,

Date Filed: November 4, 2019

1 | failed to pay her wages timely, and failed to give her proper meal and rest breaks as
2 | required by law.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Date Filed: November 4, 2019

1   VERIFICATION

2   I, **David Garibaldi**, am the **Attorney** in the above-entitled complaint.  I have read the
3   foregoing complaint and know the contents thereof.  The matters alleged are based
    on information and belief, which I believe to be true.

4   On November 4, 2019, I declare under penalty of perjury under the laws of the State
5   of California that the foregoing is true and correct.

6                                                                       **San Francisco, California**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                   -3-
                                    *Complaint – DFEH No. 201911-08157104*

28   Date Filed: November 4, 2019

**EXHIBIT B**



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

November 4, 2019

Martha Silva
New Jersey
Fresno, California

RE:     **Notice of Case Closure and Right to Sue**
         DFEH Matter Number: 201911-08157104
         Right to Sue: Silva / Hula Networks, Inc.

Dear Martha Silva,

This letter informs you that the above-referenced complaint was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
November 4, 2019 because an immediate Right to Sue notice was requested. DFEH
will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

**EXHIBIT C**

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

January 17, 2020

David Garibaldi
22 Battery Street, Suite 200
San Francisco, California 94111

RE:     **Notice to Complainant's Attorney**
         DFEH Matter Number: 202001-08932317
         Right to Sue: Silva / Hula Networks, Inc.

Dear David Garibaldi:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                          GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                          KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

January 17, 2020

RE:     **Notice of Filing of Discrimination Complaint**
        DFEH Matter Number: 202001-08932317
        Right to Sue: Silva / Hula Networks, Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing

1

2

3

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

4

5

**In the Matter of the Complaint of**

Martha Silva                                    DFEH No. 202001-08932317

6

7

                    Complainant,

vs.

8

9

Hula Networks, Inc.
929 Berryessa Rd, Suite 10
San Jose, California 95133

10

11

                    Respondents
_____

12

13

1. Respondent **Hula Networks, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

14

2. Complainant **Martha Silva**, resides in the City of  State of .

15

16

3. Complainant alleges that on or about **January 2, 2020**, respondent took the following adverse actions:

17

18

**Complainant was discriminated against** because of complainant's race, national origin (includes language restrictions), color and as a result of the discrimination was terminated.

19

20

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was terminated.

21

22

23

24

**Additional Complaint Details:** Complainant filed a complaint of employment discrimination before the State of California Department of Fair Employment and Housing on November 4, 2019, alleging, inter alia, discrimination and harassment because of her race, national origin, and color, as well as wage claims.  She obtained a right to sue that same day and filed suit in the Superior Court of California for the County of Santa Clara.

25

26

27

28

-1-

*Complaint – DFEH No. 202001-08932317*

Date Filed: January 17, 2020

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Over the course of November and December 2019, in retaliation for filing that action and notifying Hula of the filing, Hula attempted to force her to sign a new employment agreement which would reduce the benefits she was entitled to under the old agreement.  Silva continually refused and on December 29, 2019, formally served the lawsuit on Hula.  On January 2, 2020, Hula terminated Silva's employment in retaliation for filing that lawsuit and accompanying complaint of employment discrimination and harassment.

Date Filed: January 17, 2020

VERIFICATION

I, **David Garibaldi**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On January 17, 2020, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**San Francisco, California**

-3-
*Complaint – DFEH No. 202001-08932317*

Date Filed: January 17, 2020

**EXHIBIT D**



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

January 17, 2020

Martha Silva
,

RE:    **Notice of Case Closure and Right to Sue**
       DFEH Matter Number: 202001-08932317
       Right to Sue: Silva / Hula Networks, Inc.

Dear Martha Silva,

This letter informs you that the above-referenced complaint was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
January 17, 2020 because an immediate Right to Sue notice was requested. DFEH will
take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

**EXHIBIT E**



**Contractor Agreement**

1. This Agreement is made and entered into this __1st__ day of December, 2013, by and between Hula Networks, Inc., hereafter "the Company" and Martha Silvia, hereafter "Contractor."

2. **Term of Employment**. This Agreement begins on Dec 1, 2013. Martha is being hired as a Contractor  as a 1099 contractor at will, which means that either the Company or Contractor may terminate this Agreement at any time for any reason or no reason and with or without notice.  Employee's employment with the Company is "at will" and is terminable "at will" by the Company or Contractor with or without cause.  No person or entity has any authority to alter the at-will status of Contractor at any time.  No statement or writing made in connection with performance reviews, recommendations, discipline, interviews, discussions, promotion, transfer or in any other context shall result in any abrogation of or change in the at will nature of the employment relationship between Contractor and the Company.

3. **Commission Compensation**  Contractor shall receive the following as applicable to their monthly sales quota.

4. **Sales Quota** will be set at $2,400,000 revenue with $50,000 a month GP for the first year. After 12 months the quota will be reviewed and adjusted as appropriate.

   **Hardware/Service Contracts............. 25% of total GP**

   **Inventory Buys ..............15% of GP is paid to sales person when sold by any Hula Networks representative other than the sales person who found the equipment or, 25% of GP if individual who found equipment sells the equipment him or herself. (All product bought goes immediately into general inventory available for resale by entire team)**

5. All used deals must be at a minimum of 30% GP.  All deals under 30% GP will be evaluated and paid upon a case-by-case basis.  All "new deals" must be a minimum of 20% GP.  All new deals under 20% will be evaluated and paid upon a case by case basis. All deals are considered to be a "used deal" unless more than 75% of revenue is from new equipment sales. A "new deal" will be considered by any deal that has over 75 % of revenue from new equipment.  Thus any deal that has less than 75% revenue from new equipment sales is considered to be a used deal and must have 30% GP.

6. **Commission Guarantee** Contractor shall receive $3,500.00 commission guarantee for the first six months of employment or commissions (whichever is greater) ($1,750.00 paid on the 1st and the 15th of each month, or commissions which ever is greater). After the first six months the employee shall receive $2,500 commission guarantee or commissions (whichever is greater) ($1,250.00 paid on the 1st and the 15th of each month, or commissions whichever is greater).

7. **Gross Profit** is defined as total revenue minus total cost of goods sold. (COGS: taxes, cost of product, excessive shipping expense, commissions for finder's fees paid)

6200.1
259\270715.1

1

8. If Net terms are granted to a customer and the accounts receivable become more than 15 days past due commissions will be paid on %75 of the gross profit

9. Any necessary commission changes due to RMA's will be deducted from the Contractor's commissions on the following pay period or final paycheck

10. The commission is paid to the Contractor in the pay period following the receipt of payment in full of the customer invoice. Commissions are paid at the 1st and 15th of each month.

11. We want to empower you to implement and achieve your own goals, which automatically achieve those of the organization. It is our goal to have every Technology Specialist / Account Manager at Hula Networks performs at PAR for the industry. PAR is considered to be:

- $200,000 in sales Revenue each month (month one and two will be ramp up period)
- $50,000 in gross profit a Month
- $600,000 in sales revenue each quarter
- $150,000 in gross profit each quarter

7  **Customer meetings:** In order to be successful in sales it is imperative that Martha is in front of customers with the appropriate OEM partner. Thus the minimum amount of in person meetings shall be five a week.

8  **Cell phone** Company issued a maximum of $100 per month.

9  **Vacation and Sick days** 5 days paid vacation per year and 5 personal/sick days per year. For a combined total of 10 days.  No Vacation Days-Until first 6 months of employment is completed.

10  **Paid Holidays** 7 paid holidays  New Year's Day , Memorial Day, Independence Day, Labor Day, Thanksgiving Day,  Christmas Day,  New Year's Day

11  **Health Benefits** Contractor will receive $400.00 towards full medical & dental benefits (discussed upon acceptance) **Eligible 90 days after starting**.

12  **Fiduciary Duty of Contractor.**  During Contractor's employment with the Company, Contractor shall not directly or indirectly either as an employee, employer, consultant, agent or in any other individual or representative capacity, engage or participate in any business that is in competition in any manner whatsoever with the business of the Company.

13  **Modification of Agreement**.  Any modification of this Agreement will be effective only if it is in writing and signed by both parties and their representatives having actual authority to bind them.

14  **Entire Agreement of the Parties**.  This Agreement supersedes any and all agreements, either oral or written, between the parties with respect to the rendering of services by Contractor for the Company and contains all the covenants and agreements between the parties with respect to the rendering of such services. Each party to this Agreement acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by any party, or by anyone acting on behalf of any party, which is not embodied herein, and that no other agreement, statement, or promise not contained in this Agreement shall be valid or binding. Contractor acknowledges that he/she has received a current copy of all the Company policies currently in effect and shall review and be familiar with all such policies.  In the event of any conflict between the provisions of this Agreement and any other Company policy now or hereafter in effect, the provisions of this Agreement shall prevail.

6200.1
259\270715.1

2

15  Hula Networks will not tolerate employees or Contractors using prior employee proprietary information to enhance Hula Networks business.  This includes (but not limited to) customer lists, customer databases, pricing information, etc.

16  _Martha M. Silva_
Martha Silvia (Contractor)

Steve Robinson (Hula Networks)

17  _____
Signature

Signature

18  Dated: __11/28/2013__

Dated: _____

1

**CERTIFICATE OF SERVICE**
*Silva v. Hula Networks, Inc.*

2

USDC-ND, San Jose Division, Case No.

3

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

4

At the time of service, I was over 18 years of age and not a party to the action.  My business

5

address is 333 Bush Street, Suite 1100, San Francisco, CA 94104-2872. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

6

On January 27, 2020, I served the following document:

7

**DEFENDANT HULA NETWORKS, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C.  §§ 1441 (a)  AND 1331**

8

9

I served the document on the following persons at the following address (including a fax number and email addresses, if applicable):

10

| Yosef Peretz, Esq. | Tel:  415.732.3777 |
|---|---|
| David Garibaldi, Esq. | Fax: 415.732.3791 |
| Peretz & Associates | Email:  yperetz@peretzlaw.com |
| 72 Battery Street, Suite 202 | dgaribaldi@peretzlaw.com |
| San Francisco, CA  94111 | |

11

12

13

14

The document was served by the following means:

15

☒ **(BY CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the document with the Clerk of the Court using the CM/ECF system.

16

☒ **(BY U.S. MAIL)**  I enclosed the document in a sealed envelope or package addressed to the

17

persons at the address listed above and placed the envelope or package for collection and mailing, following our ordinary business practices.  I am readily familiar with the firm's practice for collection

18

and processing correspondence for mailing.  Under that practice, on the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S.

19

Postal Service, in a sealed envelope or package with the postage fully prepaid.

20

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

21

22

Dated:  January 27, 2020          */s/ B. Yasinah Johnson*
_____
B. Yasinah Johnson

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4838-2312-1586.1

**CERTIFICATE OF SERVICE**